THE STATE OF OHIO, APPELLEE, *v.* MILLER, APPELLANT.

[Cite as State v. Miller (1977), 49 Ohio St. 2d 198.]

(No. 76-1002—Decided March 9, 1977.)

Mr. *James A. Berry*, prosecuting attorney, for appellee.

Messrs. *Acton, Dunn & Busch* and *Mr. Thomas H. Busch*, for appellant.

SWEENEY, J. Appellant raises two issues in his first proposition of law.

Appellant proposes that fingerprints corresponding to those of the accused, found in a place where a crime was committed, upon objects always accessible to the public, and upon which fingerprints could have been impressed at any time, are without probative force unless the circumstances are proven beyond a reasonable doubt that the prints could have been made only at the time the crime was committed.

Ohio has not adopted such a strict standard for determining the admissibility of evidence as proposed by appellant. Rather, this court has stated that "evidence is admissible where it is of sufficient force that it logically tends to prove or disprove a fact or issue necessary to a decision in a particular case * * *." Paragraph three of the syllabus in *State* v. *Doll* (1970), 24 Ohio St. 2d 130. In the instant cause, Miller's fingerprints were discovered on a paper sack filled with Twin Fair merchandise found in one of the gym bags located in the driveway behind the store, on the blade of a hacksaw found near the overhead door, and on the cardboard backing of the hacksaw display package also found near the overhead door. These prints, in relation to the locations where they were discovered, were admissible in that they tended to prove Miller was at the scene of the crime and directly involved in its commission. Thus, appellant's argument concerning the inadmissibility of fingerprint evidence is not well taken.

Appellant proposes further that before fingerprint evidence may be used to support a conviction, such circumstantial evidence must exclude every other reasonable hypothesis except that of the defendant's guilt. While appellant's proposition is a correct statement of Ohio law (see paragraph six of the syllabus in *State* v. *Sheppard* [1956], 165 Ohio St. 293), it is this court's duty in reviewing a criminal case to confine its consideration to a determination of whether there is sufficient substantial evidence to support the verdict rendered. Paragraph five of the syllabus in *State* v. *Sheppard, supra.*

Appellant contends that the state has not proven beyond a reasonable doubt that he was the guilty party for the following reasons: (1) The state was unable to connect the defendant in any way with any of the tools allegedly used in the burglary, with the weapon used in the murder, or with any of the stolen merchandise; (2) no one could place defendant at the store at the time any of the crimes occurred; (3) the state offered no evidence establishing the time and circumstances in which the fingerprints were made; (4) the fingerprints were found on items on regular

public display, movable throughout the store; and (5) the fingerprints could have been made at any time up to six months or a year prior to the date of the identification.

The record indicates that Craycraft's assailant must have fled through an opening of the overhead door at the rear of the store by forcing open two locks securing that door. To the right of the door, and next to one of the broken locks, Miller's fingerprint was found on a hacksaw blade and on the inside portion of its display package.

Given the location of these objects, this court finds that there was sufficient evidence for the triers of fact to conclude that Miller, having no demonstrated access to such objects preceding the day of the crime, must have been the assailant who escaped through the opened overhead door.

Also, Miller's fingerprint was lifted from a paper sack inside one of the four gym bags filled with Twin Fair merchandise. From this evidence it was reasonable for the triers of fact to conclude that Miller, having collected various store items into these gym bags, carried the bags out of the store while effecting his escape.

In those jurisdictions where convictions were based largely, if not exclusively, on fingerprint evidence, the general rule has been developed in reviewing courts that fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime, 20 American Jurisprudence 329, Evidence, Section 358; 28 A. L. R. 2d 1150, Section 28.

In determining the sufficiency of the fingerprint evidence, a reviewing court must examine this evidence on a case-by-case basis.[1] The crucial issue is whether attendant

---

[1] Within the same jurisdiction, courts have reached different conclusions on the issue of sufficiency of the evidence with respect to fingerprint evidence, depending upon the particular circumstances of each

circumstances, such as the location of the accused's alleged fingerprint, the character of the premises where the print was found, and the accessibility of the general public to the object on which the print was impressed are sufficient to justify the trier of fact to conclude not only that the accused was at the scene of the crime when it was committed, but also that the accused was the criminal agent. See *Avent* v. *Commonwealth* (1968), 209 Va. 474, 164 S. E. 2d 655; *McCargo* v. *State* (1968), 3 Md. App. 646, 241 A. 2d 161, *certiorari denied* 394 U. S. 1008.

In the instant cause, although Miller's fingerprints were discovered on movable, retail items that are easily accessible to the public, such items were found either near the open overhead door at the rear of the store through which the assailant made his escape or just outside the rear of the store in the driveway.

This court concludes that there was sufficient substantial evidence for the triers of fact to conclude that Miller was the criminal agent of the crimes charged. The facts and evidence adduced herein are irreconcilable with any reasonable hypothesis other than Miller's guilt.

As his second proposition of law, appellant argues that his order of execution is unconstitutional in that the three-judge panel, pursuant to R. C. 2929.03, not only tried the charges and specifications against him, but also determined his sentence.

This argument is not well taken. The United States Supreme Court has upheld statutory schemes in which the finder of fact as to the guilt or innocence of the accused also determines the sentence. *Gregg* v. *Georgia* (1976), — U. S. —, 49 L. Ed. 2d 859; *Jurek* v. *Texas* (1976), — U. S.—, 49 L. Ed. 2d 929.

---

case. See, *e. g., Commonwealth* v. *Cichy* (1974), 227 Pa. Super. 480, 323 A. 2d 817; and *Commonwealth* v. *Hunter* (1975), 234 Pa. Super. 267, 338 A. 2d 623. See, also, *Hiet* v. *United States* (C. A. D. C. 1966), 365 F. 2d 504; *Stevenson* v. *United States* (C. A. D. C. 1967), 380 F. 2d 590; *Borum* v. *United States* (C. A. D. C. 1967), 380 F. 2d 595; and *United States* v. *Cary* (C. A. D. C. 1972), 470 F. 2d 469.

Appellant also challenges the validity of his execution order on the basis of the following portion of R. C. 2945.06, which states:

"* * * In rendering judgment of conviction of an offense punishable by death upon plea of guilty, or after trial by the court without the intervention of a jury, the court may extend mercy and reduce the punishment for such offense to life imprisonment in like manner as upon recommendation of mercy by a jury * * *."

Appellant contends that this part of R. C. 2945.06 gives uncontrolled discretion to a trial court in affirming or disaffirming the death penalty, thus rendering Ohio's death sentencing laws unconstitutional. However, that portion of R. C. 2945.06, although not repealed, has, in effect, been declared unconstitutional in *State* v. *Leigh* (1972), 31 Ohio St. 2d 97, and has been superseded by R. C. 2929.03 and 2929.04 which pass constitutional muster. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73.

Finally, appellant contends that since Ohio has not adopted a specific statutory scheme of review in death penalty cases similar to those found in the states of Georgia and Florida, its appellate review procedure fails to prevent the arbitrary and uneven imposition of the death penalty throughout the state. This argument is without merit.

The United States Supreme Court has never mandated a particular form of appellate review in death penalty cases. On the contrary, that court has recognized that prompt judicial review of cases involving the imposition of the death penalty by a court with statewide jurisdiction can provide "* * * a means to promote the evenhanded, rational, and consistent imposition of death sentences under law." *Jurek* v. *Texas, supra* (49 L. Ed. 929), at page 941. Futhermore, as pointed out in *State* v. *Osborne* (1976), 49 Ohio St. 2d 135, 147, appeals from the imposition of death sentences are brought to this court as a matter of right. This statewide method of review does serve to insure against the arbitrary and uneven imposition of the death penalty.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Celebrezze and Locher, JJ., concur.

W. Brown and P. Brown, JJ., dissent.

William B. Brown, J., dissenting. The majority upholds Miller's conviction of aggravated murder on the basis of circumstantial evidence which cannot support such a conviction because it does not exclude "every reasonable hypothesis except that of guilt." *State* v. *Urbaytis* (1951), 156 Ohio St. 271, paragraph three of the syllabus.

Although the prosecution submitted an abundance of exhibits indicating that a robbery, a burglary and a murder took place at the Twin Fair store in August 1975, its evidence against Miller is strictly circumstantial. That evidence includes Miller's fingerprint on one of approximatly eight Twin Fair paper sacks found in four gym bags located outside the store and on the hacksaw blade and its cardboard packaging found near the probable escape route. Such evidence indicates that Miller may have committed a robbery or burglary that night; but it does not directly tie Miller to the murder, and it does not exclude the possibility that someone else could have committed the crimes at the Twin Fair store.

One reasonable hypothesis consistent with Miller's innocence and with the evidence presented at trial is that Miller handled the paper sack and the hacksaw when he was in the hardware section of the Twin Fair store a few weeks before the murder. The paper sacks were accessible to the public, and, indeed, identifiable prints of persons other than Miller were found on the paper sacks left outside the store. The Twin Fair manager admitted that customers did break into packages of the type involved herein and that the policy of placing older items to the front of a display to encourage a quick sale was not strictly follow-

ed. The print left on the hacksaw package failed to disclose on Miller's thumb a cut that predated Miller's arrest and that should have shown up on a print left at the time of the crime. In addition, the hacksaw package contained unidentified prints other than the one found by the fingerprint expert to be Miller's.[2]

This court has not dealt with the sufficiency of *fingerprint* evidence to establish guilt until the present cause. However, we have held that circumstantial evidence in general is sufficient only if that evidence excludes every other reasonable hypothesis consistent with innocence, *Urbaytis, supra*. Because the paper sack, hacksaw blade and its package were accessible to the public (including Miller) *prior to* the murder, the fingerprints found on them do not exclude every hypothesis of his innocence. It is for precisely that reason that a number of other jurisdictions have held circumstantial fingerprint evidence insufficient to support a conviction unless they are found under circumstances which preclude their being made at any time other than the time the crime was committed. (See Annotation, Fingerprints, Palm Prints, or Bare Footprints as Evidence, 28 A. L. R. 2d 1115, Sections 28, 29 and 30.)

By affirming the trial court's determination, the majority professes to sanction, but does not actually apply, the approach of other jurisdictions to fingerprint evidence, undercuts the logic of this court's earlier decisions, and imposes the death penalty on evidence insufficient to sustain a conviction. For the foregoing reasons, I dissent.

P. Brown, J., concurs in the foregoing dissenting opinion.

---

[2] Other evidence inconsistent with Miller's guilt included testimony (1) that the Twin Fair manager did not see him around the store at closing time; (2) that the police were unable to trace to Miller the bloody shirt and shoes presumably left by the murderer in effecting his escape; and (3) that Miller's fingerprints were not found on the hatchet used as a murder weapon, on the axe probably used to break the jewelry counters, on the door which the murderer opened in his escape, or on the stolen merchandise left outside the store.