Although I agree with the judgment ultimately reached by the majority, I write separately to emphasize the following points.
When is a fingerprint not significant in the solving of a crime? The most damning evidence against appellant was the latent fingerprint found on the murder weapon, a .38-caliber revolver. Such evidence, in most situations, constitutes overwhelming proof of guilt. However, "[f]ingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only havebeen impressed at the time of the commission of the crime." (Emphasis added.) State v. Miller (1977), 49 Ohio St.2d 198, syllabus.
This case presents one of those rare exceptions where the fingerprint evidence by itself was insufficient to prove appellant was guilty. Quite frankly, there was nothing to link appellant's fingerprint to the moment of the crime.
The facts were that appellant had lived with the victim on and off for months prior to the murder. During this time, he apparently had access to at least one other gun present in the home. However, the state provided no evidence, direct, inferential, or circumstantial, to show precisely when appellant imprinted the murder weapon. Accordingly, this case is in sharp contrast to the typical fingerprint situation in which the offender only had access to the murder weapon when the homicide was committed. As a result, because of the lack of "hard" evidence in linking appellant directly to the crime, any error in the presentation of the other circumstantial evidence becomes critical.
In United States v. Hasting (1983), 461 U.S. 499, 508-509, the United States Supreme Court observed that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." However, even though the Supreme Court has found no constitutional right to a perfect trial, there is a constitutionallyprotected right to a fair one. Delaware v. Van Arsdall (1986),475 U.S. 673, 681.
With the foregoing in mind, the appellate court's responsibility is not to make sure the "right" side wins, but to ensure that each side has the same opportunity to present its case. Stated differently, we are entrusted to protect the process, not to guarantee the result.
After reviewing the record, I reluctantly agree that a reversal is necessary; not to protect appellant, but to protect the integrity of the judicial process. Every accused individual, regardless of guilt or innocence, is entitled to an even playing field upon which to present a defense. Even when the evidence of guilt may initially appear to be overwhelming, the process must continue to be fair and impartial. The role of an appellate court is to guarantee that happens.
As the majority correctly observes, the state presented several witnesses who provided circumstantial evidence that could support an inference that appellant was guilty of killing his grandfather. Appellant was angry with the victim and, depending on who you believed, had the opportunity to commit the crime.
Further, the jury was presented with evidence that appellant was frequently "stoned," that he played with guns, that his entire family, with the exception of the victim, had essentially written him off, and that he was an ingrate to the only person who continued to try to reach him, the victim.
In short, appellant was portrayed as a "bad" person and fell into what I call the "mad dog" category. I define that as a person who may or may not be guilty of a specific crime, but nevertheless is so bad that he needs to be put away, regardless of any guilt for the immediate crime. While on certain days, that theory may seem to have some merit, it is a theory which cannot be used in our court system without amending the Constitution.
Thus, while circumstantial evidence and inferences upon inferences may seem to support a conviction, the state still had to meet its burden of proof beyond a reasonable doubt. I am not sure it did in light of the cumulative effect of the erroneous evidential admissions as to bad character.
Although I am in agreement with the majority's conclusion that the trial court improperly permitted a witness to testify about appellant's drug use, I wish to comment further on this matter. Importantly, there was no evidence that a drug-crazed murderer committed the homicide. Beyond the murder itself, there was no appearance of any excessively brutal, irrational behavior. To the contrary, it was apparent that the crime was quite calculated and cold-blooded as the perpetrator cleverly tried to make it appear like suicide.
As aptly noted by the majority, the fact that appellant smoked marijuana has no probative value and could only be prejudicial to him. Similarly, there is nothing probative or relevant about appellant's alleged attempt to purchase crack cocaine on the night of the murder. Neither is there anything relevant about the fact that appellant may have, in the past, been under the influence of a drug known as "wet." As just explained, the particulars surrounding the murder do not suggest that a drug-addled individual killed the victim, or that the murder was committed to obtain money for drugs.
Accordingly, all evidence that appellant may have been a "drugie" is not probative or relevant to anything except bad character. As a result, it was highly prejudicial and, thus, inadmissible unless it was somehow connected to the commission of the crime. Otherwise, it was utterly irrelevant to the determination of guilt and should have been excluded as being merely evidence of bad character. Evid.R. 403.
As has been discussed, much of the circumstantial evidence against appellant was either flawed or compromised in its presentation to the jury. Most of that flawed evidence went to prove that appellant was a "mad dog" who deserved to be convicted based on general principles and not by specific proof. Worse, these prejudicial errors were not counter-balanced by overwhelming evidence of guilt. For example, the alleged admission to the police that they might as well take him to jail is not exactly the admission of guilt on which one would want to base a guilty verdict. Given the hardened, street-smart history of appellant, it could simply represent a very accurate assessment of his situation, as opposed to a confession. And, as previously discussed, the fingerprint connected him to the murder weapon, but not necessarily to the crime itself.
I express no opinion with respect to appellant's guilt or innocence in this matter. Certainly he was a likely suspect. If I had been the prosecutor, I probably would have gone to trial as well. Let the jury sort out and weigh the evidence. However, it was the job of the trial court to insure that the testimony submitted to the jury was relevant and admissible evidence. The law rightfully does not allow proof of guilt to be based primarily on proof of bad character.
Furthermore, absent the cumulative effect, I agree that any single error may not have been enough to reverse appellant's conviction. However, in the absence of overwhelming evidence of guilt, significant doubt is created with respect to this jury's verdict when the cumulative effect of the errors is shown. Therefore, I reluctantly concur in the judgment of the majority.