OPINION
{¶ 1} Defendant-appellant, Lamont Howard, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of aggravated burglary, two counts of kidnapping, one count of aggravated robbery, one count of robbery, and two counts of felonious assault. Because the sufficiency and weight of the evidence support defendant's convictions, and because defendant received effective assistance of counsel, we affirm.
 {¶ 2} According to the state's evidence, on December 26, 2001, at approximately five o'clock in the morning, Marjorie Gates, a retiree, who lived at 3172 Hamilton Avenue, awoke suddenly; the covers of her bed were pulled back. She looked up and saw a man, later identified as defendant, standing over her bed. He asked that she get up, and she did so. On defendant's inquiring whether anyone else was in the house, she replied that her adult son, Michael, who suffered from memory loss, was in his room. At defendant's request, Marjorie took Michael back to her room. Defendant told Michael to sit on top of the register with his hands underneath his lap, and Michael complied.
 {¶ 3} Defendant ultimately ransacked most of the house in an apparent search for valuables. Marjorie told him her purse was on the floor; she thought she probably had $40 in it, and defendant took the money. She was saving silver dollars in an envelope, and defendant took those, as well as Marjorie's computer. Defendant kept asking Marjorie if she had an ATM card, but she advised him that she did not. Defendant also wanted to know if Marjorie had any diamond rings, but she previously had given those to her daughters. Although she had two rings on her fingers, defendant did not want them; he wanted diamond rings.
 {¶ 4} Marjorie told defendant she had a heart condition for which she had had surgery four years earlier, so defendant was polite with her. By contrast, defendant was abrupt with Michael and stabbed Michael in the foot with what appeared to be a pen knife. Defendant further took a short knife, or bayonet, that Marjorie kept, and he hit Michael over the head with it, cutting Michael's head to the point that Michael required stitches.
 {¶ 5} Because defendant had a mask over his mouth and nose, Marjorie saw only his eyes. As a result, she was not able to identify defendant as the perpetrator, and was not able to identify him in the courtroom. According to Marjorie, defendant "was a friend of the father of [her] great grandchildren" [Tr. 26] but, had not been welcome into her house since 1990 or 1991. Similarly, Michael testified defendant was not someone he knew, or invited to their home. Michael also did not recognize defendant in the courtroom.
 {¶ 6} After defendant left the Gates' home, an emergency squad and law enforcement team came to treat Michael and to conduct an investigation. The police determined the point of entry was a kitchen window at the back of the house, where the window was open and a screen had been removed. At the window, they collected potential fingerprint evidence, and they also noticed fresh human fecal matter and a newspaper that had been used as toilet paper; they collected the newspaper. They found in a bedroom drawer a telephone Marjorie kept in the living room; police collected potential fingerprint evidence from it. Similarly, a metal box, normally kept in a hall closet, was found in the hall. Again, police collected fingerprint evidence from it. When defendant left, he drove off in Marjorie's car. When the car was retrieved, the police attempted to obtain fingerprint evidence from it. Ultimately, the lifts from the window provided no fingerprint evidence. One fingerprint from the car matched with that of Michael Gates, the other remained unidentified. The telephone and the metal box revealed defendant's fingerprints.
 {¶ 7} By contrast, defendant testified that although he met the Gates' in 1990 or 1991, in October 2001 he went to the Gates' home to speak with Michael about buying a car that Michael's son, Christopher, owned. At the time defendant stopped to inquire about the car, Michael showed him the car, they talked a bit, defendant went in the house, and defendant used the restroom. When defendant learned the car had only a V-6 engine, he decided he did not want to buy it. Defendant testified he then went to Desert High Springs, California to "try to make it in music like everybody else." (Tr. 194.) While he was there, he was arrested for the events that occurred on December 26, 2001 at the Gates' home.
 {¶ 8} The invasion of the Gates' home gave rise to a nine-count indictment filed March 28, 2002, charging defendant with one count of aggravated burglary in violation of R.C. 2911.11, two counts of kidnapping in violation of R.C. 2905.01, one count of aggravated robbery in violation of R.C. 2911.01, two counts of robbery in violation of R.C.2911.02, two counts of felonious assault in violation of R.C. 2903.11, and one count of having a weapon while under disability in violation of R.C. 2923.13. All counts, except the weapons under disability charge, carried two specifications. The matter was tried to a jury, and, at the close of the evidence, the trial court dismissed one count of robbery as "superfluous." (Tr. 227.) The jury found defendant not guilty on the weapons under disability charge, not guilty of all of the specifications, but guilty on the remaining charges. The trial court sentenced defendant accordingly. Defendant appeals, assigning the following errors:
Assignment of Error Number One
The trial court erred when it entered judgment against the defendant when the evidence presented on behalf of the state was insufficient to sustain this finding by proof beyond a reasonable doubt and the judgment was against the manifest weight of the evidence presented.
Assignment of Error Number Two
The defendant did not receive the effective assistance of counsel and the trial court violated its duty to inquire into the matter of ineffective assistance of counsel when it was apparent before the start of the trial that counsel had failed to file a notice of alibi and the defendant was complaining about an alibi witness that was not present for the trial.
 {¶ 9} Defendant's first assignment of error asserts the trial court erred because the convictions are not supported by the sufficiency and weight of the evidence. To the extent defendant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.PRIVATE
 {¶ 10} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v.Thompkins (1997), 78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 11} In support of his first assignment of error, defendant relies on State v. Miller (1977), 49 Ohio St.2d 198, the syllabus of which states, "[f]ingerprints corresponding to those of accused are sufficient proof of his identity to sustain his conviction where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at time of commission of the crime." Focusing on the time element of that statement of law, defendant contends the evidence here is insufficient to demonstrate that his fingerprints necessarily were impressed at the time the crime was committed. As factual support, defendant notes his own testimony that he had been in the Gates' home on more than one occasion.
 {¶ 12} Contrary to defendant's contentions, the state's witnesses, coupled with the state's fingerprint evidence, demonstrated a time element that brought the evidence as a whole within the purview of theMiller syllabus. The state presented evidence that the telephone, normally kept in the living room, was in a drawer in Marjorie's bedroom, and the telephone bore defendant's fingerprints. While defendant suggests the fingerprints were placed on the phone when defendant visited the Gates' home in the fall of 2001, the state's expert testimony undermined defendant's suggestion. Specifically, noting that Marjorie used the telephone three to four times a day, the state's expert testified that such high usage of the phone would have obliterated defendant's fingerprints from his claimed visit in the fall of 2001.
 {¶ 13} Similarly, a metal lockbox was normally kept in a hall closet, but the police found it in the hallway. Marjorie was the only one who used the lockbox; defendant would have had no occasion to use it, even if he were in the Gates' home in the fall of 2001. Nonetheless, the lockbox revealed defendant's fingerprint. The fingerprint evidence from both the telephone and the lockbox indicate defendant moved the items during the course of the home invasion and thus left the fingerprints the police were able to capture.
 {¶ 14} Defendant's attempts to explain the presence of his fingerprints on those items were largely unpersuasive. Defendant initially told law enforcement in California that he had not been in the Gates' home when he discussed purchasing the car; rather, he claimed the last time he had been inside the home was in the early 90's. Defendant's recollection changed, however, and he then indicated he went inside the Gates' home to discuss purchasing the car, though he could not recall whether he conveyed that information to the detective. Even so, he told the California detective that the discussion concerning the car was about one and one-half years prior to the incident giving rise to the charges, which contradicted his trial testimony that he discussed the car in the fall of 2001. Moreover, defendant had no memory of using the living room telephone or going through Marjorie's closet to handle the lockbox.
 {¶ 15} As a result, the state presented more evidence than simply a match of fingerprints. The evidence demonstrated that the fingerprints likely were impressed at the time of the home invasion. Accordingly, the sufficiency of the evidence supports defendant's convictions. Further, because defendant's testimony does little to impugn the state's evidence, the weight of the evidence also supports his convictions. Defendant's first assignment of error is overruled.
 {¶ 16} Defendant's second assignment of error asserts he was rendered ineffective assistance of counsel. Defendant cites several incidents from which he contends his representation was ineffective. To demonstrate ineffective assistance of counsel, the defendant must meet a two-part test. Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052. Initially, to demonstrate ineffective assistance of counsel, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. The defendant then must show that counsel's deficient performance prejudiced the defense. Id. This requires showing that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In effect, defendant must show that there is a "reasonable probability" that, but for counsel's error, the result of the trial would have been different. Id. at 694. Unless the defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.
 {¶ 17} Defendant initially complains that his counsel was ineffective in failing to procure an alibi witness to confirm that defendant was in California at the time of the home invasion. In connection with that assertion, defendant contends the court should have inquired into defendant's comment and made the inquiry part of the record. See State v. Deal (1969), 17 Ohio St.2d 17, syllabus (holding that if, "during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record").
 {¶ 18} Prior to trial, defendant advised the court that "for some reason, I can't get my witness here right now. I need a continuance to talk to him, get him up here. I have nobody, know what I'm saying, on my side on this." (Tr. 3.) During trial, defendant did not complain about counsel's failure to procure the witness, and defendant did not suggest counsel was ineffective. Indeed, the record indicates the trial twice was continued to allow the defense further attempts to contact an alibi witness. No notice of alibi was filed, possibly because defendant was unable to locate and secure the attendance of an alibi witness.
 {¶ 19} Given that defendant did not complain about his counsel's performance, either before the trial or during it, the trial court cannot, in these circumstances, be faulted for not conducting an inquiry under Deal, as Deal is not implicated. State v. Morrison, Franklin App. No. 02AP-651, 2003-Ohio-1517, ¶ 39, citing State v. Davis (May 19, 1998), Franklin App. No. 97APA08-1020. Moreover, despite not having filed a notice of alibi, defendant was able to present his alibi through his own testimony that he was in California at the time of the home invasion. In addition, defense counsel reinforced the testimony through his closing argument. In the final analysis, nothing in the record indicates defense counsel was ineffective concerning the alleged alibi, defendant did not complain that counsel was ineffective, and the trial court, under the circumstances, did not have a duty to inquire into counsel's effectiveness regarding the alibi issue.
 {¶ 20} Defendant next contends that counsel was ineffective in failing to listen to defendant's taped interrogation in California until the lunch hour of trial. Defendant contends a lawyer "has a duty to investigate and prepare for a case and to represent a client competently. This omission violates all these obligations." (Appellant's Brief, 13.)
 {¶ 21} Even if we assume the first prong of Strickland has been met, defendant nonetheless cannot demonstrate prejudice. Since the tape is not part of the record, and only the portions played for the jury are transcribed, we cannot determine whether the outcome of the trial would have been different in any way had defendant's counsel listened to the tape recording earlier than he did. At best, the tape raises the dual issues of when defendant spoke with Michael Gates about purchasing the car, and whether defendant was inside the Gates' home at the time. Defendant's various versions of the facts underlying each issue, however, do not explain defendant's fingerprints on the lockbox or the telephone.
 {¶ 22} Defendant further notes that his attorney was surprised by testimony regarding the fecal matter found at the point of entry at the Gates' home. Defendant's argument again fails because defendant cannot show prejudice, even if we assume deficient performance by defense counsel. Because the testimony at trial indicated a low probability that the fecal matter would render any useable deoxyribonucleic acid ("DNA") evidence, we cannot say the outcome of the trial would have been different had defense counsel been aware of, and investigated, the DNA possibilities in the fecal matter.
 {¶ 23} Defendant also notes that while the trial court was setting the matter for sentencing, his counsel mentioned a pending case involving a receiving stolen property charge. Defendant asserts counsel was ineffective in raising the issue. On the morning of sentencing, defense counsel stated:
As you're aware, this case went to trial. The jury rejected my client's claim that he was in California. I think he still stands on that belief he was in California. He was arrested for the charge that is also pending here today. And depending on what happens with sentencing will help us determine whether that will go away. I can't see why that should go to trial and hopefully it will not. I don't think it will.
(Tr. 314.)
 {¶ 24} Again, defendant cannot demonstrate prejudice on this record. As the state points out, nothing in the record suggests the trial court considered the receiving stolen property charge in sentencing defendant in the present case, much less that the trial court considered defense counsel's statement to be a suggestion that the court should do so. Rather, defense counsel simply observed the case likely would be of no significance following the sentencing in this matter.
 {¶ 25} Lastly, defendant contends that his counsel was ineffective in failing to explore the discrepancies in the time line related to defendant's presence at the Gates' home. As noted, even if defendant were believed and his testimony properly could place him in the Gates' home in the fall of 2001, that testimony does not explain his fingerprints on the telephone and lockbox on December 26, 2001. Thus, even if his defense counsel had explored the discrepancies, defendant failed to demonstrate prejudice, as we cannot say the outcome of the trial would have been different.
 {¶ 26} Because defendant has failed to demonstrate the requirements of the two-pronged analysis of Strickland, defendant's second assignment of error is overruled.
 {¶ 27} Having overruled defendant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Brown and Klatt, JJ., concur.