OPINION
{¶ 1} This is an appeal from the judgment of the Allen County Common Pleas Court which found Defendant-appellant, Thomas Anthony Medsker ("Medsker"), guilty of burglary.
 {¶ 2} The Allen County Grand Jury indicted Medsker on one count of Burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree stemming from a break-in which occurred at the Kinley residence located at 5775 Spencerville Road in Allen County, Ohio on December 31, 2002. Several items were taken from the residence including, among other things, several guns, a 27-inch TV and a laptop computer. Medsker pled not guilty, and a jury trial was held.
 {¶ 3} Alice Kinley testified, stating that on December 31, 2002, she and her husband went to a movie at approximately 4:00 or 4:30 p.m. and returned home at approximately 6:45 p.m. She also testified that upon returning home, she found the door inside the garage open and the house ransacked. She further testified that the glass louvers on the back door were closed when she and her husband left the home, but they were wide open when they returned.
 {¶ 4} Several police officers and detectives testified including Sergeant Michael Eilerman, Detective Richard McPherson, Lieutenant Garlock and Officer Kenneth Whitney. Eilerman testified as to the condition of the Kinley residence when he arrived and identified several photographs taken of the home after the burglary. Eilerman further testified that the phone service to the home had been disconnected at the outside box. Finally, Eilerman testified that he contacted McPherson, a detective for the Shawnee Township Police Department, after Mrs. Kinley noticed some fingerprints on the louvered glass door.
 {¶ 5} McPherson testified that he looked through the house with a flashlight for fingerprints on items that were capable of being fingerprinted. He also testified that there were several footprints on the carpet in the house but that they had no distinguishing qualities. McPherson also testified that he found usable prints on the glass of the louvered door and that it appeared that glass was "opened up and the hand was reached inside and the fingers curled around the glass in an attempt to pull th[e] glass out." However, there was a storm door behind the louvers preventing entry through that door. While McPherson identified other prints throughout the house they were smudged and not usable to him. However, McPherson identified, dusted and photographed usable fingerprints on the louver door. Finally, McPherson testified that Medsker became a suspect in this burglary after it was noted by an area detective that Medsker had committed similar burglaries in the past. Consequently, McPherson suggested that the fingerprint analyst compare Medsker's fingerprint card to the fingerprints found at the Kinley residence.
 {¶ 6} Garlock, a fingerprint analyst from the Allen County Sheriff's Department, testified that he compared the fingerprints on the eighth fingerprint card taken from the louver door on the Kinley residence with that of the print of the left ring finger of Medsker. Garlock testified that he only examined the eighth fingerprint card because the eighth card had the best quality latent prints. Garlock then testified that it was his opinion that the prints on the eighth fingerprint card matched Medsker's fingerprints. Garlock explained the comparison of the fingerprints on an enlarged photograph of the two prints which indicated at least fifteen matching points.
 {¶ 7} Whitney, an identification officer from the Lima Police Department, was called by the Allen County Sheriff's Department to compare the prints of Medsker and those found at the Kinley residence. Whitney testified that he had been an identification officer for thirteen years and was designated by that court as an expert in fingerprint analysis in previous cases. Whitney testified that he was given all eight fingerprint cards to compare with Medsker's prints but was not told that an officer had previously matched the prints. Whitney further testified that he used the eighth fingerprint card because it was of the best quality and that after comparing the eighth card to Medsker's fingerprints, he found that the index and ring finger prints on the eighth card came from Medsker.
 {¶ 8} Krista Rudder also testified for the State. She testified that shortly before Christmas 2002, she drove from Celina to Lima to get high on crack cocaine. However, on her way back to Celina, her car stopped working in front of the Kinley residence. Krista pulled the car into the driveway and since the Kinley's were not home, left a note on the windshield with her name and phone number. She called for a ride from the neighbor's house and returned to Lima to smoke crack. Sometime later, Krista was walking down the street in Lima, limping as a result of a sprained ankle. Krista testified that Medsker stopped to offer her a ride, and they got high for three or four days. On December 31, 2002, Medsker drove her to pick up her car from the Kinley's driveway. Krista testified that her car was no longer in the driveway and that she and Medsker left the driveway without Medsker leaving the car.
 {¶ 9} Medsker and three alibi witnesses, Shannon, Stephanie and Cindy Gaberdiel, testified for the defense. Medsker asserts that he was at the Gaberdiel home on December 31, 2002 with the grandmother of his two children, Cindy, and her two daughters, Shannon, age sixteen, and Stephanie, age thirteen. Cindy, Stephanie and Shannon testified that Medsker was at their home continuously from approximately 12:00 noon on December 31, 2002, until he left for work at 7:00 a.m. on January 1, 2003. Shannon and Cindy testified that they watched movies that day; however, Stephanie stated that they did not watch any movies that day.
 {¶ 10} Medsker testified that while he was at the Gaberdiel's house most of December 31, 2002, he left a few times to go down the street. He further testified that he was at the Gaberdiel's house between 2:30 p.m. until 7:00 p.m. on December 31, 2002. Medsker stated that he picked up Krista Rudder on either December 29 or 30, 2002. He further testified that after he picked up Rudder, he took her to where she had left her car on Spencerville Road and that when they did not find her car; Medsker went up and knocked on the door. He stated that he knocked on two doors and rang the doorbell on a third. Medsker also testified that it is possible that the fingerprint found on the louver door could have come from him when he knocked on the door. Finally, Medsker testified that he smokes crack cocaine and that he has pled guilty to two previous burglaries. Additionally, Medsker admitted that he committed twelve or fourteen other burglaries for which he did not plea.
 {¶ 11} After hearing all of the evidence, the jury found Medsker guilty of the charge in the indictment and the trial court then sentenced him to the maximum, eight years in prison. Medsker now appeals asserting four assignments of error.
 First Assignment of Error The Defendant was deprived of his right to a fair trial andeffective assistance of counsel by many errors and omissions oftrial counsel.
 Second Assignment of Error The Defendant was deprived of his right to a fair trial due tomisconduct of the State of Ohio in eliciting testimony regardingthe reputation of Defense witnesses that had no bearing oncharacter for truthfulness and which violated, on its face,several provisions of the Ohio Rules of Evidence.
 {¶ 12} This court has previously addressed the issue of ineffective assistance of counsel when a trial has taken place and has determined that courts must consider "`whether the accused, under all the circumstances * * * had a fair trial and substantial justice was done.'" State v. Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, 2000 WL 1420271, * 2, quoting State v. Calhoun (1999), 86 Ohio St.3d 279, 289. In addition, attorneys licensed by the State of Ohio "are presumed to provide competent representation." Jones, supra, citingState v. Hoffman (1998), 129 Ohio App.3d 403, 407.
 {¶ 13} The State of Ohio has also adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; See State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"Jones, supra, quoting Strickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley,42 Ohio St.3d at 142. The second prong regarding reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 14} Medsker argues that his trial counsel was ineffective because he failed to file a motion in limine objecting to the reliability of fingerprint evidence, failed to file a Crim. R. 29 motion for acquittal, and did not object to alleged improper testimony elicited regarding Shannon Gaberdiel. The Ohio Supreme Court has held that a reviewing court should not "second-guess trial strategy decisions, and `a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Mason (1998),82 Ohio St.3d 144, 157-158, quoting Strickland, 466 U.S. at 689; see, also, State v. Bey (1999), 85 Ohio St.3d 487, 493.
 {¶ 15} As to the fingerprint reliability, Medsker only makes a general assertion that fingerprint evidence is unreliable. However, the Ohio Supreme Court has held that "[f]ingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime."State v. Franklin (1991), 62 Ohio St.3d 118, 124, quotingState v. Miller (1977), 49 Ohio St.2d 198, syllabus, vacated on other grounds in Miller v. Ohio (1978), 438 U.S. 711. In this case, McPherson testified that it appeared that the fingerprint identified as Medsker's print was put on the glass in an effort to pull the glass out of the louver windows, which would support a finding that the print was made during the burglary. Moreover, Medsker's counsel did challenge the fingerprint testimony through the cross-examination of each fingerprint expert witness. Consequently, Medsker has not shown that his counsel's conduct fell below an objective standard of reasonableness or that the outcome would have been different had Medsker's trial counsel challenged the reliability of fingerprinting.
 {¶ 16} Medsker also asserts that his trial counsel was ineffective because he failed to make a Crim. R. 29 motion for acquittal which provides for dismissal when there is insufficient evidence presented to support a conviction. However, a review of the record reveals that the evidence introduced by the State was sufficient to sustain a conviction. Consequently, we cannot find that Medsker's counsel's conduct fell below an objective standard of reasonableness or that the outcome would have been different had Medsker's trial counsel filed a motion for acquittal.
 {¶ 17} Finally, Medsker argues that his trial counsel should have objected to the introduction by the State of alleged improper character testimony given by McPheron regarding Shannon Gaberdiel prostituting herself for crack cocaine. However, Shannon opened the door to this line of questioning through her own unsolicited testimony, and in any event, Medsker's trial attorney did object to some of the testimony provided. Moreover, as both Cindy and Stephanie both provided the same alibi for Medsker as Shannon provided, we cannot find that his counsel's conduct fell below an objective standard of reasonableness or that the outcome would have been different had this testimony not been introduced at trial. As we cannot find that Medsker's trial attorney was ineffective, his first assignment of error is overruled. Furthermore, for the reasons stated above Medsker's second assignment of error is also overruled.
 Third Assignment of Error The Court erred in sentencing the Defendant to the maximumterm of incarceration since the Defendant did not commit theworst form of the offense.
 {¶ 18} In reviewing a felony sentence, an "appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it finds by clear and convincing evidence:
(1) That the record does not support the sentencing court'sfindings under division (B) or (D) of section 2929.13, divisionE(4) of section 2929.14, or division (H) of section 2929.20 ofthe revised code, whichever if any is relevant; [or]
 (2) That the sentence is otherwise contrary to law.
R.C. 2953.08(G)(2). Moreover, the trial court is in the best position to make the fact-intensive evaluations required by the sentencing statutes as the trial court has the best opportunity to examine the demeanor of the defendant and evaluate the impact of the crime on the victim and society. State v. Martin (1999),136 Ohio App.3d 355, 361.
 {¶ 19} R.C. 2929.14 provides that an offender who commits a felony of the second degree may be sentenced from two to eight years in prison. The trial court may only sentence the offender to the longest term if it finds that the defendant is a person who "committed the worst forms of the offense [or] * * * who pose[s] the greatest likelihood of committing future crimes." R.C. 2929.14(C). See also State v. Cosgrove (May 8, 2001), Auglaize App. No. 2-2000-33, unreported (allowing sentence to stand when record supports "the greatest likelihood of the committing future crimes" but fails to support the "worst form of the offense."). Moreover, the court must also give reasons for its findings on the record for sentencing an offender to the maximum term as listed in R.C. 2929.14(C). R.C. 2929.19(B)(2)(d); see also State v. Edmondson (1999), 86 Ohio St.3d 324 (finding that R.C. 2929.14(C) and 2929.19(B)(2)(d) prevents a court from imposing a maximum sentence unless the court records findings that gives its reasons for selecting the maximum sentence.).
 {¶ 20} Medsker argues that the evidence does not support the trial court's finding that he committed the worst form of the offense. Specifically, Medsker argues that he did not commit the worst form of the offense because the crime was committed in the afternoon, no person was in the structure, no weapon was used and no injury to persons was committed or contemplated. However, we need not address this argument as the trial court also found that Medsker posed the greatest likelihood of committing future crimes, which is all that is needed to sentence Medsker to the maximum sentence. Consequently, Medsker's third assignment of error is overruled.
 Fourth Assignment of Error The verdict was against the manifest weight of the evidence.
 {¶ 21} When reviewing whether the verdict was against the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), 3rd Dist. No. 5-97-31, citing State v. Martin (1983), 20 Ohio App.3d 172,175; State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary."State v. Apanovitch (1987), 33 Ohio St.3d 19, 23-24, citingState v. Mattison (1985), 23 Ohio App.3d 10, syllabus.
 {¶ 22} Medsker relies on his alleged "solid" alibi to support this assignment of error. However, the jury was free to discredit these witnesses. Furthermore, Medsker asserts that "thin evidence" was produced by the State. However, reviewing the evidence produced at trial as described above, we cannot find that the jury clearly lost its way in finding Medsker guilty of Burglary. Consequently, Medsker's fourth assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Cupp and Bryant, JJ., concur.