DECISION
{¶ 1} Defendant-appellant, Rayshawn A. Williams, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of burglary in violation of R.C. 2911.12, a felony of the second degree, and one count of theft in violation of R.C. 2313.02, a felony of the fifth degree. On appeal, defendant assigns a single error:
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
Because the sufficiency and manifest weight of the evidence support the judgment of the trial court, we affirm.
 {¶ 2} By indictment filed March 29, 2004, defendant was charged with one count of burglary and one count of theft arising out of the August 21, 2003 break-in of the residence of Richard and Dixie Hastings. Defendant entered a not guilty plea; the matter was tried, beginning on April 19, 2005.
 {¶ 3} According to the state's evidence, on August 21, 2003, Richard and Dixie Hastings were residing in a townhouse apartment at 6304 Cherylbrook Lane near Dublin. The residence had two doors: one in the front led to the street, and one in the back opened to a parking area.
 {¶ 4} Richard was not working at the time, but his wife was employed. Around noon, Richard took lunch to her and returned home. When he arrived home, his television, purchased two days earlier, was sitting in the parking lot "almost straight with the back door." (Tr. 40.) The back door was open a little over half way, and a window near the back door was broken, allowing access to the doorknob and deadbolt. About to call police, Richard saw a neighbor coming toward him, who stated he called police but observed nothing of the break-in.
 {¶ 5} Once police came, they ascertained no one was inside, and Richard entered the home. Although he left the house in good order, he saw it was ransacked. Missing were an estimated $10,000 in goods, including a new recently purchased Compaq Presario computer, a Dell computer, a 27-inch RCA television, a DeWalt cordless drill, a Xeno PlayStation 2, a JVC "boom box" radio, and one or two cameras.
 {¶ 6} When Richard and police went upstairs, they found a box for a Nextel telephone that Richard and his wife purchased in April 2003, or approximately four months before the break-in. The Hastings kept the box on the top shelf of the spare bedroom closet, but following the break-in Richard found the opened box on the bed in the spare bedroom, its contents strewn on the bed. The police dusted both the box and a vase that had been moved in an effort to recover fingerprints.
 {¶ 7} Richard testified the Nextel telephone was purchased new, as evidenced by the cellophane wrap on the box at the time of purchase. From the time the Hastings purchased the telephone until the day of the break-in, the box was never out of the house. According to Richard, he and Dixie suffered no prior break-ins, held no parties from the time they purchased the telephone until the break-in, and never met nor allowed defendant into their home.
 {¶ 8} After examining the fingerprints collected from the scene, Paul R. Bivens, of the Columbus Police Department Latent Fingerprint Unit, concluded the fingerprint lifted from the Nextel box matched defendant's fingerprint. Bivens' opinion was premised on his matching 13 points, more than the required eight, from the lifted fingerprint with defendant's prints on file at the Columbus Police Department. Bivens subsequently compared the lifted print with those obtained from defendant on his arrest, and Bivens concluded the fingerprint from the Nextel box, the fingerprints on file, and the fingerprints obtained on defendant's arrest were all of the same person.
 {¶ 9} Once Bivens identified the fingerprint obtained at the crime scene, a warrant was issued for defendant's arrest. On March 5, 2004, Officers Jeffrey Lipp and Matthew Dunbar were on patrol, running license plates through the computer in their paddy wagon when the retrieved information indicated an outstanding felony warrant. Because the individuals in the vehicle matched the description of the person subject of the warrant, the officers stopped the vehicle. Dunbar went to the driver's side; Lipp approached the passenger. The passenger advised Dunbar he was David Holland, but could produce no identification. Lipp asked the passenger's date of birth, and he told Lipp he was born in 1977. When Lipp asked his age, the passenger advised he was 20 years of age. Given his response, as well as the passenger's match with the physical description of the person subject of the warrant, Lipp took the passenger to the paddy wagon. Dunbar asked the driver for the passenger's name, and the driver advised that his passenger was Rayshawn Williams. Defendant subsequently revealed his correct name.
 {¶ 10} At trial, defendant presented no evidence. Following the trial court's decision to overrule defendant's Crim.R. 29 motion for acquittal, the matter was submitted to the jury, who found defendant guilty of both counts. The trial court sentenced accordingly. Defendant appeals, contending the evidence is insufficient to support his conviction and the jury verdict is against the manifest weight of the evidence.
 {¶ 11} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 12} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra; Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury thus may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill
(1964), 176 Ohio St. 61, 67.
 {¶ 13} The sole issue in defendant's trial was the identity of the perpetrator who broke into the Hastings' residence. Because no one saw the break-in, the state relied entirely on fingerprint evidence to identify defendant as the person responsible for the burglary and theft. Defendant contends the fingerprint evidence, alone, fails to support the judgment of the trial court.
 {¶ 14} "Fingerprints corresponding to those of the accused are sufficient proof of this identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime." State v. Miller (1977),49 Ohio St.2d 198, syllabus. "In determining the sufficiency of the fingerprint evidence, a reviewing court must examine this evidence on a case-by-case basis. The crucial issue is whether attendant circumstances, such as the location of the accused's alleged fingerprint, the character of the premises where the print was found, and the accessibility of the general public to the object on which the print was impressed are sufficient to justify the trier of fact to conclude not only that the accused was at the scene of the crime when it was committed, but also that the accused was the criminal agent." (Citations omitted.) Id. at 202-203.
 {¶ 15} Here, the evidence demonstrates that the Nextel box was moved during the burglary, and a fingerprint lifted from the box matched known prints of defendant on file with the Columbus Police Department, as well as the fingerprints taken from defendant at the time of his arrest. While that evidence, in itself, may not be sufficient to sustain the judgment, the state presented other evidence to advance the charges against defendant. Specifically, the state eliminated any other possible source for the fingerprints through testimony from the Hastings that they purchased the telephone in April 2003 and never took the box outside the apartment or lent it to anyone from that point until the break-in in August 2003. The Hastings further testified they had neither any parties nor any prior break-ins from April to August that would have allowed anyone else access to the box.
 {¶ 16} Moreover, the evidence did not indicate defendant had any access to the Hastings' residence prior to the break-in. To the contrary, the evidence showed the Hastings did not know defendant, and they had never given him permission to enter, or allowed him into, their home.
 {¶ 17} Finally, Bivens testified the fingerprint from the Nextel box could be, at most, two weeks old. As Bivens explained, black fingerprint powder works best within 24 to 48 hours after the fingerprint was placed. While he stated the black powder could even pick up a week or a week and one-half old fingerprint, he advised that the print he analyzed was put on the box within two weeks of the fingerprint lift.
 {¶ 18} The state thus excluded any other reason for defendant's fingerprint to be on the Nextel box found in the wake of the break-in. Construed in the state's favor, the evidence allowed a reasonable person to conclude that because defendant's fingerprint was on the Nextel box, he broke into the Hastings' residence on August 21, 2003. State v. Thomas (Sept. 28, 1994), Montgomery App. No. 14289 (concluding that a stranger's prints, found on private property where trespassers have no permission to be, allowed the trier of the fact to determine the stranger was the one who committed the offense). Moreover, while defendant cross-examined the state's witnesses, and in particular Bivens, the cross-examination raised little more than a bare possibility that the fingerprint evidence could be unreliable. At most, the cross-examination created an issue of credibility for the jury to resolve, and on this record we cannot say the jury lost its way in finding the state's evidence persuasive. See, e.g. State v.Howard, Franklin App. No. 03AP-453, 2003-Ohio-6941.
 {¶ 19} Accordingly, defendant's single assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.