[Cite as *State v. Gibson*, 2018-Ohio-4454.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-17-1212

      Appellee                              Trial Court No. CR0201701850

v.

Joshua Gibson                               **DECISION AND JUDGMENT**

      Appellant                             Decided:  November 2, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, for appellee.

Patricia Horner, for appellant.

* * * * *

**JENSEN, J.**

## I.  Introduction

{¶ 1} Appellant, Joshua Gibson, appeals the judgment of the Lucas County Court of Common Pleas, sentencing him to a total of 22.5 years in prison after a jury found him guilty of aggravated robbery.  Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On May 18, 2017, appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and (C). The indictment included an attached firearm specification under R.C. 2941.145(D), (E), and (F), and a repeat violent offender specification under R.C. 2941.149.

{¶ 3} Following pretrial discovery, a jury trial commenced on July 11, 2017. The following facts were established at trial.

{¶ 4} On May 8, 2017, A.M. was working as a pharmacist at the Toledo Family Pharmacy. A customer in a black jacket and red hat approached the counter of the pharmacy. The pharmacy section is surrounded by bullet proof glass, except for a window at the counter where the pharmacists can communicate with the customers. The man in the red hat gave A.M. a false name. As A.M. looked for the name in the computer, the man in the red hat jumped onto the counter and brandished a black handgun. The man pointed the gun at A.M. and demanded that he be given all the pills or "I'll kill somebody today." The man in the red hat then attempted to fire his gun at the floor three times, but it did not fire. A.M. was able to locate and press the emergency button to alert police. Having observed the gun malfunction, the manager tried to tackle the man in the red hat. This caused the man to stumble and he grabbed the inside of the glass to gain his balance. After this, he fell down from the counter and fled.

{¶ 5} The man in the red hat was pursued by both the manager and A.M. into the parking lot. This entire incident was captured on the pharmacy's surveillance video. The

2.

manager and A.M. followed the man in the red hat down the street and into a yard before losing track of him. A.M. and the manager then returned to the pharmacy to wait on the arrival of the police.

{¶ 6} Once police arrived, A.M. discussed the matter and described the suspect as a short, black, male, with a tattoo under his eye. A.M. informed police that the suspect was wearing a red hat and black jacket. The police proceeded to examine the pharmacy's video surveillance footage. The surveillance footage confirms that the suspect touched the glass as he was attempting to regain his balance.

{¶ 7} On May 9, 2017, police returned to the pharmacy to collect fingerprints from the glass that was touched by the suspect. The police were able to recover two prints and found no other prints on the glass. These two prints were later matched to appellant's middle and ring fingers. Appellant's prints were obtained from appellant at the Lucas County Corrections Center.

{¶ 8} Subsequently, A.M. was shown an array of six people, including appellant. A.M. could not be certain of the suspect's identity, but was able to narrow the identity to two of the individuals, one of which was appellant.

{¶ 9} During trial, the investigating officers testified to recovering a hat, coat, gun, and magazine with 3 bullets from various yards in the neighborhood surrounding the pharmacy. These items appeared to be the same items used in the robbery, and witnesses saw the assailant pass through the areas where the items were found. The gun was found to be operable. At no time did the prosecution claim any of these items belonged to

3.

appellant, and there were no fingerprints or DNA on any of these items that could be used to identify appellant.

{¶ 10} At the conclusion of the jury trial, appellant was found guilty of aggravated robbery with an attendant firearm specification. Appellant was also found to be a repeat violent offender. Ultimately, appellant was sentenced to ten years for the aggravated robbery count, plus an additional consecutive sentence of 54 months for the firearm specification. The court further ordered appellant to serve eight years for the repeat violent offender specification, to be served consecutive to the aforementioned prison terms, for a total prison term of 22.5 years.

## B. Assignments of Error

{¶ 11} Appellant has timely appealed his conviction, and assigns as error the following:

> 1. Appellant's conviction was against the manifest weight of the evidence.
>
> 2. Appellant's trial attorney was ineffective.

## II. Analysis

## A. Was the trial court's decision against the manifest weight of the evidence?

{¶ 12} In his first assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. In a manifest weight challenge,

> this court sits as if the "thirteenth juror" and must review the record,
> weigh the evidence and all reasonable inferences drawn from it, consider

4.

the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier-of-fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Leech*, 6th Dist. Lucas No. L-13-1156, 2015-Ohio-76, ¶ 32, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} Appellant does not dispute that the state's evidence demonstrates the commission of an aggravated robbery as alleged in the indictment. Instead, appellant argues that the evidence does not demonstrate that he was the perpetrator of the aggravated robbery.

{¶ 14} In support of his argument, appellant claims that A.M. made inconsistent identifications in this case. However, the record lacks any identification of appellant made by A.M. Rather, the identification of appellant as the perpetrator of the robbery was established by the state utilizing the fingerprints found at the scene of the robbery.

{¶ 15} Fingerprint evidence has long been seen as a reliable form of identification. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 122, citing *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 93. The Supreme Court of Ohio has recognized the use of fingerprints for identification purposes in criminal cases, stating "fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the

5.

commission of the crime." *State v. Miller*, 49 Ohio St.2d 198, 361 N.E.2d 419 (1977), syllabus.

{¶ 16} Here, the surveillance video from the pharmacy confirms that the perpetrator of the aggravated robbery touched the glass at a location not ordinarily touched by customers or pharmacy staff. When examined, the glass contained only appellant's fingerprints. Further, appellant was the only individual observed touching the spot on the glass from which the fingerprints were lifted. Under these circumstances, the state's fingerprint evidence, paired with the surveillance video, demonstrate that appellant was the perpetrator of the aggravated robbery at the pharmacy. We find that the trier-of-fact did not clearly lose its way. Thus, appellant's first assignment of error is not well-taken.

## B. Was trial counsel for appellant ineffective?

{¶ 17} In his second assignment of error, appellant argues that his trial counsel was ineffective for failing to request the suppression of the jacket, hat, gun, and ammunition clip, all of which were found in the area around the crime scene.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the

6.

deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 18} Here, appellant claims that since there was no DNA evidence tying the jacket, hat, gun, and ammunition clip to him, the evidence should have been suppressed in a motion in limine. Appellant cites no authority to support his claim that this evidence was inadmissible. The extent to which the state failed to directly link this evidence to appellant goes to the weight of the evidence, not its admissibility, and whether the items belonged to appellant was a question for the trier-of-fact. Moreover, we find that the fingerprint evidence, standing alone, was sufficient for the trier-of-fact to identify appellant as the man in the video. Therefore, we conclude that the outcome of this case would not have been altered had trial counsel filed a motion in limine in an effort to prevent the state's admission of the jacket, hat, gun, and ammunition clip into evidence.

{¶ 19} Accordingly, appellant's second assignment of error is not well-taken.

7.

### III. Conclusion

**{¶ 20}** In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                     _____
                                                                          JUDGE

James D. Jensen, J.                          

Christine E. Mayle, P.J.                     _____
CONCUR.                                                        JUDGE

                                                              _____
                                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

8.