224 N.J. Super. 354 (1988)
540 A.2d 875
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LANCE D. WATSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1988.
Decided April 13, 1988.
*356 Before Judges PETRELLA, DREIER and BAIME.
M. Virginia Barta, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; M. Virginia Barta of counsel and on the brief).
Virginia M. Lincoln, Assistant Prosecutor, argued the cause for respondent (Herbert H. Tate, Jr., Essex County Prosecutor, attorney; Virginia M. Lincoln of counsel).
The opinion of the court was delivered by BAIME, J.A.D.
Following a jury trial, defendant was found guilty of second degree burglary (N.J.S.A. 2C:18-2), first degree robbery (N.J.S.A. 2C:15-1) and aggravated assault (N.J.S.A. 2C:12-1(b)(1)). At sentencing, the trial court merged the aggravated assault offense into the robbery conviction and imposed consecutive custodial terms, aggregating 22 years. As part of the sentences *357 imposed, the court directed that defendant serve ten years without parole eligibility. In addition, defendant was fined $300 and ordered to pay penalties totaling $50 to the Violent Crimes Compensation Board.
On appeal, defendant asserts that (1) the trial court incorrectly denied his motion for a judgment of acquittal at the close of the prosecution's case, (2) the prosecutor exceeded the bounds of fair comment in his summation and (3) the sentences imposed were manifestly excessive and unduly punitive. In his pro se supplemental brief, defendant urges additionally that (1) the verdict was against the weight of the evidence and (2) irrelevant and prejudicial testimony was improperly admitted.
We need not recount the facts at length. The record discloses that at approximately 2:00 a.m. on September 4, 1984, Ms. Jane Trimmer, who resided in a second floor apartment at 13 Branford Place, Irvington, was awakened by a man standing over her who was attempting to stuff a sock in her mouth. While attempting to stifle her screams, the intruder struck Ms. Trimmer, cutting her face and knee. After a brief struggle, the man turned and fled. Because it was extremely dark in the bedroom, Ms. Trimmer was unable to see her assailant's face. According to the victim, she merely observed his silhouette in the light emanating from the street. Approximately $100 in cash was taken.
The ensuing police investigation revealed that the intruder had gained entrance to the apartment by cutting through the balcony screen door. Circumstantial evidence revealed that the perpetrator had climbed an outside column, hoisted himself up onto a flagpole holder, which was more or less parallel to the ground, and from there had stepped onto the balcony of the victim's apartment. The flagpole was bent and further investigation revealed "smudges" on the western side of the front entrance column approximately five and one-half feet from the ground. The police theorized that the perpetrator had placed his hand around the column in attempting to hoist himself onto *358 the flagpole holder. Impressions of the fingerprints were taken and sent to the Federal Bureau of Investigation for analysis. At trial, a fingerprint expert testified that the impressions conclusively matched the left ring finger of defendant. Evidence was presented that defendant never resided at the apartment complex.
Following the conclusion of the State's case, the trial court denied defendant's motion for a judgment of acquittal, concluding that a jury could find the accused guilty beyond a reasonable doubt on the evidence presented. Defendant neither testified nor presented any witnesses in his behalf. As we have noted, the jury found defendant guilty on all counts.

I.
We first consider defendant's argument that the trial court erred by denying his motion for a judgment of acquittal. Although phrased in a variety of ways, defendant's contention is predicated upon the thesis that a conviction can rest solely on fingerprint evidence only where the State has proven beyond a reasonable doubt the fingerprints could not have been impressed at a time other than when the offense was committed. Defendant claims that the State was bound to negate every hypothesis except that of guilt. It is urged that to countenance a conviction here would be to hold that anyone who touches anything which is discovered later at the scene of a crime may be found guilty.
The extent to which a conviction may hinge upon fingerprint evidence is a novel question in New Jersey.[1] There is no dearth of reported opinions in other jurisdictions, however. Although the issue has received somewhat uneven treatment, it is generally established that proof of an accused's fingerprints found in *359 a place where a crime was committed under such circumstances that they could only have been imprinted at the time of the offense is sufficient proof of identity to withstand a motion for a judgment of acquittal and to sustain a conviction. See, e.g., State v. Carter, 118 Ariz. 562, 578 P.2d 991 (Sup.Ct. 1978); State v. Thorpe, 188 Conn. 645, 453 A.2d 88 (Sup.Ct. 1982); State v. Pryor, 306 So.2d 675 (La.Sup.Ct. 1975); Commonwealth v. LaCorte, 373 Mass. 700, 369 N.E.2d 1006 (Sup.Ct. 1977); State v. Ouellette, 125 N.H. 602, 484 A.2d 1148 (Sup.Ct. 1984); Ricks v. Commonwealth, 218 Va. 523, 237 S.E.2d 810 (Sup.Ct. 1977); In re M.M.J., 341 A.2d 421 (D.C. 1975); Musgrove v. State, 3 Md. App. 54, 237 A.2d 804 (App.Ct. 1968); State v. Simmons, 528 S.W.2d 8 (Mo. App.Ct. 1975). See also Annotation, "Evidence  Finger, Palm, or Footprint," 28 A.L.R.2d 1115, 1154 (1953) and Anno.Supp. (1981).
While most jurisdictions have accepted this general principle, there appears to be a split of authority concerning the quantum and quality of evidence necessary to establish that the fingerprints were impressed at the time the crime was committed. Several courts have imposed the requirement that the State must exclude every hypothesis other than that the fingerprints were imprinted at the time of the offense. See, e.g., Solis v. People, 175 Colo. 127, 485 P.2d 903 (Sup.Ct. 1971); Musgrove v. State, supra; State v. Miller, 49 Ohio St.2d 198, 361 N.E.2d 419 (Sup.Ct. 1977), vacated 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978). In other words, these decisions mandate that "every other reasonable hypothesis except that of ... guilt" must be negated in order to sustain a conviction. State v. Miller, supra, 49 Ohio St.2d at 201, 361 N.E.2d at 422. See also Solis v. People, supra, 485 P.2d at 904.
Other jurisdictions have adopted a less rigid rule. These decisions have eschewed the principle that the prosecution is bound to exclude every possibility that the fingerprints were impressed at a time other than when the crime was committed. Instead, these jurisdictions have favored a more flexible approach, requiring only that the object upon which the fingerprints *360 were discovered was generally inaccessible to the defendant and, therefore, was probably touched during the commission of the crime. See, e.g., United States v. Lonsdale, 577 F.2d 923, 927 (5 Cir.1978); United States v. Jones, 433 F.2d 1107, 1108-1109 n. 10 (D.C. Cir.1970); Borum v. United States, 380 F.2d 595, 596-597 (D.C. Cir.1967); State v. Carter, supra, 118 Ariz. at 563, 578 P.2d at 992; State v. Thorpe, supra, 188 Conn. at 647-649, 453 A.2d at 89; Lawless v. State, 3 Md. App. 652, 657-660, 241 A.2d 155, 159-160 (App.Ct. 1968); Commonwealth v. La Corte, supra, 373 Mass. at 701-705, 369 N.E.2d at 1008-1009; State v. Simmons, supra, 528 S.W.2d at 9-10; State v. Ouellette, supra, 125 N.H. at 603-604, 484 A.2d at 1150.
We are convinced that a rigid rule requiring the prosecution to exclude every possibility that the fingerprints were imprinted at a time other than the commission of the crime suffers from a certain sterility and is of doubtful utility. Were we to adopt such a principle, legitimate prosecutions would be defeated in all cases in which it is possible to devise speculative hypotheses consistent with a defendant's innocence. In that respect, our Supreme Court long ago rejected the sweeping view that "when the State's evidence is circumstantial `all of the circumstances not only must concur to indicate a defendant's guilt but they must also be inconsistent with any other rational conclusion.'" State v. Mayberry, et al, 52 N.J. 413, 436 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969), quoting State v. Donohue, 2 N.J. 381, 390 (1949). Although the Court had originally expressed the view that, to sustain a conviction on circumstantial evidence, the proofs must exclude "every other hypothesis except that of guilt," State v. Donohue, supra, 2 N.J. at 390, that formulation was subsequently criticized, see State v. Goodman, 9 N.J. 569, 581 (1952), and was ultimately abandoned. See, e.g., State v. Mayberry, et al, supra, 52 N.J. at 436; State v. Billingsley, 46 N.J. 219, 237 (1966); State v. Ray, 43 N.J. 19, 30-31 (1964); State v. Fiorello, 36 N.J. 80, 88 (1961), cert. den. 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 *361 (1962); State v. Dancyger, 29 N.J. 76, 84 (1959), cert. den. 360 U.S. 903, 79 S.Ct. 1286, 3 L.Ed.2d 1255 (1959). We perceive no sound basis to resurrect it in the context of fingerprint evidence.
We hold that a conviction may be based solely upon fingerprint evidence as long as the attendant circumstances establish that the object upon which the prints are found was generally inaccessible to the defendant and, thus, a jury could rationally find beyond a reasonable doubt such object had been touched during the commission of the crime. The mere existence of other possible hypotheses is not enough to remove the case from the jury. If a reasonable mind might fairly have a reasonable doubt or might not have one, the case is for the jury, and the decision is for the jurors to make. In making the threshold determination on a motion for a judgment of acquittal, the trial court need not be convinced of guilt beyond peradventure before the jury is permitted to consider the case. Rather, the State's evidence must be viewed in its entirety, and the prosecution given the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably can be drawn therefrom. State v. Reyes, 50 N.J. 454, 458-459 (1967).
So posited, we are convinced that the trial court did not err by denying defendant's motion for a judgment of acquittal. Although defendant's fingerprint was found on an outside column of the victim's apartment complex, it was not in an area generally accessible to the public. Nor was its position on the column consistent with the possibility of inadvertent touching. We need not embark upon a speculative excursion and conjure up all possible innocent explanations as to why defendant's fingerprints appeared at the scene of the crime. That function is not lawfully ours. Borum v. United States, supra, 380 F.2d at 601 (Burger, C.J. [then Judge], dissenting). As judges, we do not have a monopoly on common sense. We are entirely *362 satisfied that the trial court was correct in submitting the issue to the jury.

II.
We agree with defendant's argument that several of the prosecutor's remarks during his summation exceeded the bounds of fair comment. The gist of the prosecutor's statements was that the role of defense counsel is to obfuscate the facts. Although the trial court erroneously denied defense counsel's timely objection, it later instructed the jury in its principal charge that counsel's remarks did not constitute evidence and were not to have any part in their deliberations.
We need not retread on ground so thoroughly covered by our Supreme Court in State v. Ramseur, 106 N.J. 123, 320 (1987). See also State v. Gilmore, 103 N.J. 508, 535 n. 8 (1986); State v. Vinegra, 73 N.J. 484, 501-503 (1977) (Hughes, C.J., dissenting); State v. Johnson, 65 N.J. 388, 392 (1974); State v. Spano, 64 N.J. 566, 568-569 (1974); State v. Farrell, 61 N.J. 99, 104-105 (1972); State v. Johnson, 31 N.J. 489, 511 (1960); State v. D'Ippolito, 19 N.J. 540, 549-550 (1955); State v. Orecchio, 16 N.J. 125, 140 (1954). Suffice it to say, the prosecutor's mischaracterization of defense counsel's role was wholly inexcusable, serving not only to demean the attorney but also to disparage the profession generally. See State v. Thornton, 38 N.J. 380, 397 (1962), cert. den. 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963).
We are nevertheless convinced that defendant was not deprived of a fair trial. In our view, the prosecutor's dereliction was both fleeting and isolated and could not possibly have prejudiced defendant in the eyes of the jury. The trial court's forceful instruction in its principal charge obviated the potential for prejudice.
We would be remiss, however, were we to fail to note that instances of prosecutorial excesses in the course of summation seem to come to this court with numbing frequency. *363 Often, as here, such derelictions go unpunished because it is clear that no prejudice to the defendant resulted. Although an automatic reversal rule might well have prophylactic value in deterring future misconduct, public security should not suffer because of the prosecutor's blunder. We again remind prosecutors that a criminal trial is not a sporting event. Winning and doing justice are not always equivalent. We allude to the warning expressed by our Supreme Court in State v. Ramseur, supra, that possible violations of the special ethical rules governing prosecutors may be referred to the appropriate district ethics committee for disciplinary action. 106 N.J. at 123.

III.
We are constrained to remand the matter for resentencing because of deficiencies in the trial court's statement of reasons. Specifically, the trial court made none of the findings required by State v. Kruse, 105 N.J. 354, 358-359 (1987) and State v. Yarbough, 100 N.J. 627, 644 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). See also State v. Miller, 108 N.J. 112, 122 (1987). Of course, we have no occasion to determine whether imposition of parole ineligibility terms and consecutive sentences was appropriate. Without the requisite particularized statement of reasons by the sentencing court, appellate review is futile. On remand, the trial court is directed to identify the aggravating and mitigating factors, describe the balance of those factors and explain how it determines defendant's sentences. In addition, the court is to identify and weigh the appropriate factors in determining whether the sentences are to run consecutively or concurrently.

IV.
We have reviewed the remaining arguments advanced in defendant's pro se supplemental brief and find that they are clearly without merit. R. 2:11-3(e)(2).
*364 Accordingly, the convictions are affirmed, but the matter is remanded for resentencing. We do not retain jurisdiction.
NOTES
[1] In State v. Connors, 87 N.J.L. 419 (Sup.Ct. 1915), our Supreme Court held that proof of the accused's fingerprints, together with proof of his presence at the location of the crime, was sufficient to warrant conviction for burglary. Thus, the conviction did not rest solely on fingerprint evidence.