**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0727-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JHON VELENCIA, a/k/a JHON J.
VALENCIA, JHON J. RENDON,
JOHN J. VALENCIA, and JHON J.
VALENCIARENDON,

      Defendant-Appellant.

_____

Submitted January 26, 2021 – Decided  February 11, 2021

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New, Law Division, Union County, Indictment No. 17-03-0223.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A Union County grand jury charged defendant Jhon Velencia in a two-count indictment with second degree robbery, N.J.S.A. 2C:15-1(a)(1), and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). Following a multi-day trial, the jury convicted defendant of third-degree aggravated assault, and acquitted him of the robbery charge. The trial judge granted the State's motion for an extended term and sentenced defendant to four years in prison. This appeal followed.

On appeal, defendant raises the following contention:

> POINT I
>
> THE PROSECUTOR COMMITTED MISCONDUCT AND REDUCED THE STATE'S BURDEN OF PROOF IN HER SUMMATION WHEN SHE PROVIDED AN INACCURATE DEFINITION WHILE DISCUSSING THE INTOXICATION DEFENSE. (Not Raised Below).

After reviewing the record in light of this contention, we affirm defendant's conviction and sentence.

I.

The State's proofs against defendant at trial were overwhelming. The victim testified he was walking to his car on a city street at approximately 10:00 p.m. Before he could open the car door, defendant approached the victim from

2

behind and demanded the key. The victim refused, and defendant pushed him into the car.

The victim crossed the street where there was a Bank of America on the corner. Defendant followed him and again demanded the key to the victim's car. Defendant also told the victim to give him money.

The victim crossed the street a second time in an attempt to get away from defendant. At that point, defendant struck the victim from behind so hard that the victim incorrectly believed he had been hit with a metal pipe.[1] Defendant punched the victim multiple times and tried to reach into the victim's pockets. During the attack, the victim's telephone and key fell to the ground.

The victim thought that defendant had taken these items and he began to fight back. Defendant attempted to flee into a bar, but security guards prevented him from doing so.

The police then arrived. Officer Guiliana Alessandri testified that defendant was "screaming" when the police got to the scene. According to the officer, defendant "looked like he was drunk . . . . [H]e looked like[] he was heavily intoxicated, and he kept saying that somebody stabbed him." However,

---

[1] A surveillance video of a portion of the incident showed that defendant used only his hands to strike the victim.

Officer Alessandri determined that defendant only had some scratches on his face. On the other hand, the victim suffered a fractured nose and required several stitches to close a wound on his lip.

The State introduced a surveillance video taken from a security camera that captured a portion of the assault. The video showed defendant punching the victim first, and the victim then defending himself. At one point, defendant attempted to strike the victim, but he missed and fell to the ground. However, defendant got back up and continued the assault. The State also presented body cam footage taken by Officer Alessandri showing the police ordering defendant to "get down" on the ground after they arrived at the scene and defendant understanding and complying with this command.

Defendant did not testify at trial and he presented no witnesses.

## II.

In his closing statement to the jury, defendant's attorney raised a voluntary intoxication defense. Voluntary intoxication is not a defense to a crime "unless it negat[es] an element of the offense." N.J.S.A. 2C:2-8(a). In order for intoxication to negate an element of the offense, there must be a "prostration of faculties," which is "a disturbance of mental or physical capacities resulting from the introduction of substances into the body" so that the actor is unable to

4

form the requisite purpose to commit the crime. N.J.S.A. 2C:2-8(e)(1). See also State v. Cameron, 104 N.J. 42, 54 (1986) ("firmly fixed in our case law is the requirement of 'prostration of faculties' as the minimum requirement for an intoxication defense").

In Cameron, the Supreme Court addressed the extreme level of intoxication necessary to satisfy the "prostration of faculties" test. Id. at 54. The Court stated:

> [I]t is not the case that every defendant who has had a few drinks may successfully urge the defense. The mere intake of even large quantities of alcohol will not suffice. Moreover, the defense cannot be established solely by showing that the defendant might not have committed the offense had he been sober. What is required is a showing of such a great prostration of the faculties that the requisite mental state was totally lacking. That is, to successfully invoke the defense, an accused must show that he was so intoxicated that he did not have the intent to commit an offense. Such a state of affairs will likely exist in very few cases.
>
> [Ibid. (alteration in original) (citation omitted) (quoting State v. Stasio, 78 N.J. 467, 495 (1979) (Pashman, J., concurring and dissenting)).]

Further, the Court described "some of the factors pertinent to the determination of intoxication sufficient to satisfy the test of 'prostration of faculties.'" Id. at 56. Those factors included:

> [T]he quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events.
>
> [Ibid.]

In his summation, defense counsel pointed to the testimony of Officer Alessandri, who stated that defendant "looked like he was drunk" and "looked like[] he was heavily intoxicated" when the police arrived at the assault scene. He also argued that defendant fell to the ground after swinging and missing the victim with a punch, and later claimed he had been stabbed when all he had were a few scratches. Based on this "erratic" behavior, defense counsel argued that defendant was too "drunk" to have formed the intent necessary to commit either of the two offenses, robbery and aggravated assault, that were the subject of the trial.

The prosecutor responded to the defense's argument with a lengthy summary of the testimony in an attempt to show that defendant did not satisfy the prostration of faculties test. She began by stating:

> The defendant was persistent. He was focused, and he was intent on taking what was not his, and he followed that victim across two streets and down Elizabeth

A-0727-18

Avenue until he got angry.  The victim was not giving him the items.

> . . . .

> Before I play the [video of the] assault, I just want to remind you that the State submits that it's clear from this video that the defendant was acting purposively and knowingly.  The defendant was focused, motivated and he was very persistent in his actions.  He knew exactly what he was doing.  He knew that he was assaulting [the victim].  The State submits that he was acting purposeful, and it was a conscious objective to assault [the victim].

The prosecutor also asked the jurors to pay attention to specific actions defendant took during the assault because they were indicative of the fact that he acted with the required mental state to commit the offenses.  For example, the prosecutor noted that defendant did not demand the victim's car key until the victim was near the car and did not order the victim to give him money until it appeared the victim was crossing the street toward a bank.  The prosecutor stated:

> The State would also submit that it was the defendant's conscious objective when he was near the vehicle to take the keys, because when the defendant saw the victim near his vehicle, what does he ask for?  He asks for the car keys.  So, it's not that he was so drunk out of his mind he doesn't know what he was doing.  He's near a vehicle when he sees [the victim] with the car keys in his hand.  He's leaning into the car.  He's coming up to him and saying give me your keys.

7

He's not asking the people at the bus stop for their keys. He's not in Central Park in the middle of it asking those people for keys. He's asking a man who is near his vehicle for his car keys.

And then the defendant waits until the victim crosses the street towards the Bank of America to start demanding money from him, because it's clicking in the defendant's head that there's money, Bank of America, give me your money.

The prosecutor then began playing the surveillance video for the jury.

Addressing the defense argument that defendant fell to the ground after missing the victim with one of his punches, the prosecutor stated:

On the video, it shows that the defendant just, in a stance, threw a right hook at [the victim]. The defense wants you to believe that the defendant was so drunk that he didn't know what he doing. [sic] He threw a pretty good right hook, and he didn't fall to the ground. There was force behind that hook, and that caused [the victim] to stumble.

If you look at the defendant's feet when he is engaging with the victim, what is he doing? He's in a fighter's stance. One foot and one foot in the behind. And what is that fighter's stance for? It's to maintain your balance. He . . . doesn't maintain his balance the whole time. But as soon as he falls down, what does he do? He gets right back up. He's so drunk, he falls and he's able to get right back up keep going.

The State would submit that at this point, the defendant has enough knowledge of what he's doing, that when he gets the victim down on the ground, now

8

he's on top of him, and he's wailing on him in an attempt to finish what he started.

After completing that portion of the video, the prosecutor asserted that defendant was acting purposely and knowingly:

> Now, the defense has made arguments to you that the defendant was . . . drunk. He wasn't acting purposely or knowing. He was just so intoxicated. He was acting like a fool. Now the defendant was demanding certain items at appropriate times. So how can he not be acting with purpose when he's by the vehicle where the victim is and he's saying give me those keys. Or when he's walking to the bank and he's saying give me the money, give me the money.
>
> What do we really know about the defendant's intoxication other than this video? Officer Alessandri testified that she believes that he was highly intoxicated, but couldn't remember if he smelled like alcohol. [The victim] testified that he didn't really smell alcohol, but he believes that he was on something. So those two statements, plus this video, that's all the intoxication we have here.
>
> The State would submit that just because [you're] drunk or you're on something, that doesn't mean that you don't know what you're doing. The defendant knew exactly what he was doing.

The prosecutor next played the excerpt from the video that occurred after the police arrived and ordered defendant to get on the ground. Arguing that defendant responded immediately and appropriately to the officers' orders, the prosecutor noted that defendant was not so intoxicated that he was unable to

9

A-0727-18

understand and comply with their commands. The prosecutor stated that the police told defendant:

> Get Down. Get down. What does the defendant do? He gets down. [Are] members of the Elizabeth Police Department, are they touching him? Are they using force to put him down to the ground? No. They're just asking him to get down, get down. He complied.

The prosecutor concluded her lengthy summation on this point by referring to the fact that the judge would instruct the jurors on the voluntary intoxication defense. The prosecutor explained:

> Ladies and gentlemen, [the trial judge] will read you the law in this case, but in order for intoxication to negate an element of one of the offenses charged, namely that intoxication would negate a purposefully or knowing intent crime, this is essentially what the model jury [charge] says, and if I say something different than the judge, obviously it's what the judge says that controls.
>
> In considering the question of intoxication, you should carefully distinguish between the condition of mind, which is merely excited by intoxicating drink or drug and yet capable of acting with purpose or knowledge and the conditions in which one's mental facilities are so prostrated as to deprive one of his will to act and ability to reason thereby rendering a person incapable of acting, and thus, preventing a person from committing the crimes charged with the mental state required of either purposely or knowing.

A-0727-18

The prosecutor then discussed the prostration of faculties test by referring to a dictionary definition of the word "prostrate":

> Now, I pulled this definition off of Merriam-Webster Dictionary. What does the prostrate word mean? Prostrate means:
>
> "1. Stretched out with face on ground in adoration or submission, also lying flat;
>
> 2. Completely overcome and lacking vitality, will or power to rise; or
>
> 3. Trailing on the ground."
>
> You've seen those two surveillance videos where the defendant is following way behind the victim, stalking him towards the Bank of America, then again following him after the victim crosses the street, goes onto Sixth Avenue and then turns and tries to make his way to Elizabeth Avenue. Was the defendant so prostrated there? At that time, was he stretched out with his face on the ground?
>
> You saw the video where the defendant roundhouse hooks the victim, and he's standing. He used such force with that blow, that he broke the victim's nose. Was he so prostrated then? No.

The prosecutor later completed her summation by again referring to defendant's specific intent to commit the crimes charged:

> The defendant was intent on taking what didn't belong to him and would not stop with a no near the vehicle. He was intent, he was focused and he was persistent, and he would not stop because he wanted

11

something of value, and [the victim] was not willing to give that up.

Defendant did not object to the prosecutor's comments during her summation.

For the first time on appeal, defendant now argues that the prosecutor misstated the law in the final section of her summation when she referred to a dictionary definition of the word "prostrate." Defendant claims that by suggesting that he had to be lying helpless on the ground at the time of the offense for the voluntary intoxication defense to apply, the prosecutor comments improperly lowered the State's burden of proof and deprived him of a fair trial. We disagree.

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive [the] defendant of a fair trial." State v. Timmendequas, 161 N.J. 515, 575 (1999) (citing State v. Chew, 150 N.J. 30, 84 (1997)). "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." State v. Nelson, 173 N.J. 417, 460 (2002) (alterations in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

"[P]rosecutors are permitted considerable leeway to make forceful, vigorous arguments in summation," but must generally limit their comments to

the evidence presented and reasonable inferences therefrom. Id. at 472. On appeal, the court must assess the prosecutor's comments in the context of the entire record. Ibid. "[A] 'fleeting and isolated' remark is not grounds for reversal." State v. Gorthy, 226 N.J. 516, 540 (2016) (quoting State v. Watson, 224 N.J. Super. 354, 362 (App. Div. 1988)).

When counsel fails to object to a prosecutor's remarks, the plain error standard applies and, to warrant reversal, the remarks must be "of such a nature as to have been clearly capable of producing an unjust result." Id. at 540 (quoting R. 2:10-2). Generally, if there is no objection, the remarks will not be deemed prejudicial. Timmendequas, 161 N.J. at 576. Counsel's failure to object suggests that counsel did not consider the remarks to be prejudicial at the time they were made. Ibid. Moreover, the failure to raise a timely objection deprives the trial court of the opportunity to address any impropriety. Ibid.

Applying these standards, we are satisfied that the prosecutor's comments did not deprive defendant of a fair trial. Throughout her lengthy comments concerning the voluntary intoxication defense, the prosecutor was merely highlighting the factors that our Supreme Court found should be considered in determining whether there was "intoxication sufficient to satisfy the 'prostration of faculties'" test. Cameron, 104 N.J. at 56. Thus, the prosecutor noted that

defendant did not lack coordination throughout the assault because he threw a number of punches that landed with force and maintained himself in a fighter's stance in order maintain his balance. She also asserted that defendant was persistent in his attempts to force the victim to relinquish the key to his car and his money and appeared to have planned the attack to take place at a time the victim was in close proximity to both the car and the bank. In addition, the prosecutor pointed out that defendant was able to understand and comply with the police officers' commands that he get down on the ground.

Taken in this context, the prosecutor's brief comments about the dictionary definition of the word "prostrate," and her observations that instead of lying on the ground, defendant was able to pursue and then assault the victim for an extended period of time before he attempted to flee, were clearly intended to underscore the appropriate theme of her summation that defendant was not so intoxicated that he was unable to act with the required mental state. Therefore, we detect no misconduct on her part.

Even if the prosecutor's discussion of the word "prostrate" was deemed misleading, it did not rise to the level of plain error. Defendant did not object to the remarks, which indicates he did not believe they were prejudicial. As outlined above, there was overwhelming evidence that defendant was capable of

14

acting purposely and knowingly and was not so intoxicated that he met the "prostration of faculties" test. Moreover, the prosecutor reminded the jurors during her summation that the judge would provide them with instructions on the law and that they must follow the judge's instructions.

The judge thereafter properly charged the jury to disregard statements of the law by the prosecutor and defense counsel and accept only the law as stated by the court. In addition, the judge delivered the following Model Charge[2] on intoxication negating an element of an offense:

> In considering the question of intoxication, you should carefully distinguish between the condition of mind, which is merely excited by intoxicating drink or drugs and yet capable of acting with purpose or knowledge [and] . . . the condition in which one's mental faculties are so prostrated, as to deprive one of his will to act and the ability to reason, therefore rendering a person incapable of acting, and thus, preventing the person from committing the crimes charged with the mental state required of either purposely or knowingly.

In sum, we perceive no error that was clearly capable of producing an unjust result. We therefore affirm defendant's conviction and sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] Model Jury Charges (Criminal), "Intoxication Negating an Element of the Offense" (N.J.S.A. 2C:2-8(a)) (rev. Oct. 18, 2005).

A-0727-18