**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3908-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AL-RAHEEM S. MARROW,
a/k/a BIRTH AL-RAHEEM,
and SAMAD MARROW,

     Defendant-Appellant.

_____

Submitted October 7, 2021 – Decided October 22, 2021

Before Judges Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-06-1858.

Joseph E. Krakora, Public Defender, attorney for appellant (Jack L. Weinberg, Designated Counsel, on the briefs).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On June 10, 2016, an Essex County grand jury returned a four-count indictment charging defendant Al-Raheem Marrow with first-degree conspiracy to commit murder (count one); first-degree murder (count two); second-degree unlawful possession of a weapon (count three); and second-degree possession of a weapon with an unlawful purpose (count four). Prior to trial, the motion judge granted the State's motion to admit statements defendant made to the police during two separate interviews.[1]

Following a multi-day trial, the jury found defendant guilty of conspiracy to commit murder and the two weapons offenses, and not guilty on the murder charge. The trial judge sentenced defendant to twenty-five years in prison on the conspiracy conviction, subject to an eighty-five percent period of parole ineligibility, and five years of parole supervision upon release pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge imposed a consecutive eight-year term with a four-year period of parole ineligibility on the possession of a weapon for an unlawful purpose conviction, a concurrent eight-year term with a four-year period of parole ineligibility for unlawful possession of a weapon. Thus, the judge sentenced defendant to a thirty-three-year aggregate term, subject to the parole ineligibility periods described above.

---

[1] The matter was then reassigned to the trial judge.

A-3908-18

On appeal, defendant raises the following contentions:

POINT I: THE COURT ERRED WHEN IT ADMITTED THE DEFENDANT'S STATEMENT OF JANUARY 26, 2016. THE DETECTIVES FAILED TO SCRUPULOUSLY HONOR THE DEFENDANT'S REQUESTS TO END QUESTIONING AND LIED TO THE DEFENDANT WHEN HE SOUGHT HIS STATUS AS THE QUESTIONING PROGRESSED.

POINT II: THE PROSECUTOR'S COMMENTS DURING SUMMATION CONSTITUTED PROSECUTORIAL MISCONDUCT DEPRIVING THE DEFENDANT OF A FAIR TRIAL. (Not raised below).

A. The Prosecutor Argued Facts Not In Evidence.

B. The Prosecutor Commented Upon the Defendant's Fifth Amendment Right To Remain Silent.

C. The Prosecutor Made An Improper Appeal to Passion and Improperly Bolstered the Credibility of the Investigating Detectives.

POINT III: THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE PURSUANT TO R. 3:18-1.

POINT IV: THE COURT IMPOSED AN EXCESSIVE SENTENCE WHICH DID NOT TAKE INTO CONSIDERATION ALL APPROPRIATE CODE SENTENCING GUIDELINES.

After reviewing the record in light of defendant's contentions, we affirm his convictions, but remand for resentencing.

3

A-3908-18

I.

On March 11, 2015, the police found the victim, Jermaine Bynes, lying on the ground in the courtyard of a Newark housing development. Bynes had been shot three times in the back of the head. Detectives at the murder scene found Bynes' cellphone next to him and, in a street nearby, located a cellphone with a cracked screen. They also recovered three .9 millimeter shell casings.

A detective analyzed the two cellphones. From Bynes' phone, the detective extracted an audio recording of two men speaking, followed by three consecutive gunshots and then, a few seconds later, a fourth gunshot that sounded like it had been fired further away from the phone. The detective was only able to recover the telephone number from the second phone and traced this number to defendant.

On March 13, 2015, Detective David Fontoura interviewed defendant.[2] After initially denying he knew Bynes, defendant told Fontoura that he and Bynes were both members of the Brick City Brims street gang. Defendant claimed he was talking to Bynes on the night of his death when they were approached by another gang member, Sultan Wheeler, and a second man.

[2] At defendant's request, this interview was not recorded. On appeal, defendant does not challenge the admissibility of the statements he made during the interview.

According to defendant, Wheeler shot Bynes, then pointed the gun at defendant and told him not to say anything. Fontoura testified he later attempted to find Wheeler but was not successful.

In July 2015, Detective Javier Acevedo became the lead detective on the case. He was not able to identify any eyewitnesses to the murder. Acevedo testified he did not attempt to have the audio recording from Bynes' phone enhanced or further analyzed because "he didn't think that capability was available."

On January 26, 2016, Acevedo and Detective Kevin Green interviewed defendant at the prosecutor's office. They recorded the interview, which lasted approximately an hour and forty minutes.

At first, defendant gave the detectives a different account than he had provided to Fontoura. Defendant now alleged that he had not been with Bynes on the night he was killed, but did see him with two men as defendant was walking through the area. Defendant claimed that one of the men was Wheeler, who he said was not a member of the Brims gang. Defendant saw Wheeler shoot Bynes and then Wheeler shot at defendant. Defendant stated he dropped his phone as he was running away and confirmed that the phone the police recovered belonged to him.

After the detectives confronted defendant with his prior contradictory statements about the incident, defendant stated he was with Bynes in the courtyard when Wheeler and another man approached. The two men spoke to Bynes and then Wheeler shot him. Defendant claimed he tried to stop Wheeler from killing Bynes and did not know why he shot him.

Later in the interview, defendant changed his account again to assert he was standing with Wheeler and two other men before Wheeler shot Bynes. The detectives questioned the veracity of this new claim. Acevedo told defendant that he had heard that the Brims were angry with Bynes because he had used another gang member as a shield in a shoot-out with the State Police and that member had been killed. Defendant then admitted this was the reason Bynes was murdered, but continued to insist that he was not the shooter.

The detectives told defendant they believed he was lying to them and defendant insisted he was telling the truth. Eventually, defendant admitted he knew that Wheeler was going to kill Bynes because he and Wheeler met the night before to discuss it. Defendant stated the two men were angry with Bynes and blamed him for the death of their fellow gang member. Defendant asserted that he and Wheeler argued about who was going to do the shooting, but defendant told Wheeler he could not kill Bynes. Wheeler then decided to shoot

6

Bynes himself. Defendant admitted he went with Wheeler on the night of the murder to confront Bynes.

After Wheeler shot Bynes three times, he and defendant began to run from the scene. Defendant told the detectives that Wheeler gave him the gun because he was a faster runner. However, defendant accidentally shot himself, which accounted for the fourth gunshot heard on the recording recovered from Bynes' phone.

Defendant ran to his girlfriend's house and she treated his wounds. The girlfriend testified that defendant told her he was shot when someone tried to rob him. Defendant also stated that the murder weapon was a "9," meaning a .9 millimeter gun.

Defendant did not testify at the trial and the defense rested without calling any witnesses after the judge denied defendant's motion for an acquittal at the conclusion of the State's case-in-chief.

## II.

Prior to the trial, the motion judge conducted a two-day evidentiary hearing on the State's motion to admit defendant's March 13, 2015[3] and January

---

[3] As noted above, the admissibility of the March 13, 2015 statement is not at issue in this appeal.

A-3908-18

26, 2016 statements in evidence. With regard to the January 26, 2016 statement, Acevedo testified at the hearing that defendant was not considered a "suspect" at the time of the interview, but was a "person of interest." Acevedo and Green read defendant the standard Miranda[4] warnings, which defendant then signed. Defendant asked if he was being charged and Acevedo "indicated he was not charged at that point" because "[t]here were no murder charges or there wasn't any plan to charge him with murder at that point."

At the hearing, the State introduced the videotape of the January 26, 2016 statement into evidence, and the prosecutor played portions of it. The prosecutor asked Acevedo whether defendant ever "indicate[d] that he wanted to stop speaking" during the interview and Acevedo said that he did not. Defense counsel did not ask Acevedo any questions on cross-examination concerning whether defendant ever alleged he asked the detectives to stop the interview.

In his written decision granting the State's motion to admit the January 26, 2016 statement, the motion judge found that "defendant neither invoked nor attempted to invoke" his right to remain silent. The judge found that "Acevedo testified at the hearing and the video confirms, that [defendant] never asked for the questioning to cease." The judge concluded "that under the totality of the

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

circumstances[,]" including "defendant's age, detail of <u>Miranda</u> warnings, length of detention and interrogation, threats or inducements, use of police trickery, physical or psychological pressure, [and] previous encounters with the law[,]" defendant made his statement voluntarily.

Now, for the first time on appeal, defendant asserts he asked the detectives to stop their questioning when he allegedly asked them during the interview to "take [him] to jail."[5]  In making this assertion, defendant points to the highlighted sentence in the following excerpt from the "listening aid transcript" that the State provided to the motion judge:

> [DEFENDANT]: You all charging me for that, right?
>
> DET. ACEVEDO: Sit down.
>
> DET. GREEN: You see your chart on this table? You see your chart on this table?[6]
>
> DET. ACEVEDO: (indiscernible) over here.
>
> [DEFENDANT]: (indiscernible).
>
> DET. ACEVEDO: Sit down. We want the truth.

---

[5]  At the time of the January 26, 2016 interview, defendant was being detained in jail on unrelated charges.  Acevedo transported him from the jail to the prosecutor's office for the interview.

[6]  Upon reviewing the video, and in context, it is clear that Green used the word "charge" rather than "chart."

[DEFENDANT]: <u>You (indiscernible) take me to jail.</u>[7]

DET. GREEN: We just want the truth.

[DEFENDANT]: Because I'm not --

DET. ACEVEDO: Sit down. Sit down. Sit down. Sit down.

[DEFENDANT]: (indiscernible).

DET. ACEVEDO: You're not telling us.

[DEFENDANT]: Because I'm telling the truth. I did not shoot --

DET. ACEVEDO: Have a seat. Have a seat. Let's figure it out.

[DEFENDANT]: Oh, bro. Oh, bro.

DET. GREEN: We going to figure it out (indiscernible).

DET. ACEVEDO: Have a seat.

DET. GREEN: You can't stand up in here. You got to have a seat.

DET. ACEVEDO: What are you doing?

DET. GREEN: What are you doing?

[DEFENDANT]: I'm tying this thing around my neck, bro, because you (indiscernible) some bullshit, bro.

---

[7] Upon reviewing the video, we are satisfied that defendant stated, "You might as well take me to jail, bro, cause y'all not trying to listen."

A-3908-18

DET. GREEN: Sit down. Put your arm back in the thing.

DET. ACEVEDO: Relax.

DET. GREEN: Put your arm back in there. Calm down. Put your arm back in your jumpsuit. All right.

[DEFENDANT]: I did not shoot him, yo --

DET. GREEN: All right.

DET. ACEVEDO: Relax.

DET. GREEN: Put your arm back in jumpsuit.

DET. ACEVEDO: Relax.

[DEFENDANT]: Because you -- because you lied to me.

DET. GREEN: I lied to you?

[DEFENDANT]: Yes.

DET. GREEN: You've been lying since you been in this room. You (indiscernible)

[DEFENDANT]: I'm telling the truth, bro. I'm really telling the truth.

DET. GREEN: Do you hear what you just said? I'm lying to you, but you been lying since you been in this room.

[DEFENDANT]: No. You said you got me.

11

DET. GREEN:  All right.  Well, I got you.  I'm sitting right here (indiscernible) I can't --

DET. ACEVEDO:  We're trying to get you.

[DEFENDANT]:  I'm -- I'm -- I didn't shoot him.  I'm telling --

DET. ACEVEDO:  But you don't understand.

[DEFENDANT]:  I did not shoot him.

[(emphasis added).]

The law governing our review of defendant's contention is well-established.  We defer to a trial court's fact findings on a Miranda motion, if supported by sufficient credible evidence.  State v. Hreha, 217 N.J. 368, 381-82 (2014) (citing State v. Johnson, 42 N.J. 146, 161 (1964)).  We do not, however, defer to a trial judge's legal conclusions, which we review de novo.  State v. Rockford, 213 N.J. 424, 440 (2013).

The State bears the burden to prove beyond a reasonable doubt that the interrogating officers have complied with Miranda.  State v. Yohnnson, 204 N.J. 43, 59 (2010).  The trial judge must examine the totality of the circumstances.  State v. Adams, 127 N.J. 438, 447-48 (1992).

Once the police have given a defendant the Miranda warnings, "the subsequent procedure is clear.  If the individual indicates in any manner, at any

time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473-74. After it is invoked, the defendant's right to remain silent must be "scrupulously honored." State v. Johnson, 120 N.J. 263, 282 (1990) (quoting Michigan v. Mosley, 423 U.S. 96, 104 (1975)). Otherwise, "any statement taken after the [defendant] invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." Miranda, 384 U.S. at 474.

"[A] request to terminate an interrogation must be honored 'however ambiguous.'" State v. Bey, 112 N.J. 45, 64-65 (1988) (quoting State v. Kennedy, 97 N.J. 278, 288 (1984)). In determining a suspect's meaning, "a minute parsing of the words used," in isolation, may lead to an inaccurate conclusion. State v. Alston, 204 N.J. 614, 627 (2011). On the other hand, a court must be mindful that "suspects do not, and cannot be expected to, 'speak with the discrimination of an Oxford don.'" Ibid. (quoting Davis v. United States, 512 U.S. 452, 459 (1994)). Thus, a defendant is "not required to express his [or her] desire with the utmost of legal precision." Bey, 112 N.J. at 65.

As the Court noted in Bey, however, if a "defendant's conduct and remarks are . . . equivocal, and the police [are] reasonably . . . unsure of [the] defendant's wishes," they may ask the defendant "to [clarify] the meaning of his [or her]

A-3908-18

statements." Id. at 65 n.10. The officers' questions must be "narrowly restricted" to this purpose. Ibid.; see also Alston, 204 N.J. at 623 (quoting Johnson, 120 N.J. at 283) (holding that where a suspect's request for an attorney is ambiguous, the police may seek clarification so long as the clarifying questions do not "delay, confuse, or burden the suspect in his assertion of his rights").

Applying these principles, we are satisfied that defendant never asked the detectives to "take him to jail" in an attempt to stop the interview. As noted, defendant stated, "You might as well take me to jail, bro, cause y'all not trying to listen." Defendant was already standing when he uttered this statement and he remained standing for about another minute. During this part of the interview, defendant continued to insist he was telling the detectives the truth and was clearly frustrated that they continued to tell him that he was lying. In this context, defendant's "take me to jail" statement was clearly a plea to the detectives, not to be taken to jail, but to be believed.

Contrary to defendant's argument on appeal, the detectives were not obligated to question defendant about what he meant by the remark because defendant quickly resumed stating that he did not shoot Bynes, and he did so before the detectives asked any more questions. By continuing to speak to the

detectives and proclaim his innocence, it was "clear that [defendant was] not invoking his right to remain silent . . . ." See State v. S.S., 229 N.J. 360, 383 (2017).

Under the totality of these circumstances, we are satisfied that the motion judge, after reviewing the video recording, correctly granted the State's motion to admit the January 26, 2016 statement in evidence. Defendant did not exercise his right to remain silent, to speak to an attorney, or to have an attorney present during questioning at any point during the interview, either ambiguously or unambiguously.

We also reject defendant's contention that the detectives' failure to inform him that he was "a suspect" prevented him from knowingly waiving his Miranda rights. In support of this argument, defendant relies upon the Supreme Court's decisions in State v. Vincenty, 237 N.J. 122, 135 (2019) and State v. A.G.D., 178 N.J. 56, 68 (2003). However, these cases are plainly distinguishable from the present matter because both involved situations where the police did not inform the defendant that he had already been charged with committing an offense, not that he was merely a suspect. Vincenty, 237 N.J. at 135; A.G.D., 178 N.J. at 68.

Here, however, Acevedo testified that defendant was a person of interest, and the detectives correctly told defendant that no charges had been filed against him. Our Supreme Court has held that the police are not required to advise a defendant of his status as a suspect in a crime. State v. Nyhammer, 197 N.J. 383, 405 (2009) (stating that "[u]nlike the issuance of a criminal complaint or arrest warrant, suspect status is not an objectively verifiable and discrete fact . . . . A suspect to one police officer may be a person of interest to another officer"). Therefore, we discern no error in the motion judge's conclusion that defendant made a knowing and voluntary waiver of his Miranda rights under the circumstances of this case.

### III.

For the first time on appeal, defendant next asserts that the prosecutor's remarks during summation deprived him of a fair trial. Defendant argues that the prosecutor improperly (1) argued facts not in evidence; (2) commented on defendant's right to remain silent; (3) bolstered the credibility of the investigating detectives; and (4) appealed to the passion of the jury. These contentions lack merit.

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive [the] defendant of

A-3908-18

a fair trial."  State v. Timmendequas, 161 N.J. 515, 575 (1999) (citing State v. Chew, 150 N.J. 30, 84 (1997)).  "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense."  State v. Nelson, 173 N.J. 417, 460 (2002) (alterations in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

"[P]rosecutors are permitted considerable leeway to make forceful, vigorous arguments in summation," but must generally limit their comments to the evidence presented and reasonable inferences therefrom.  Id. at 472.  On appeal, the court must assess the prosecutor's comments in the context of the entire record.  Ibid.  "[A] 'fleeting and isolated' remark is not grounds for reversal."  State v. Gorthy, 226 N.J. 516, 540 (2016) (quoting State v. Watson, 224 N.J. Super. 354, 362 (App. Div. 1988)).

When counsel fails to object to a prosecutor's remarks, the plain error standard applies and, to warrant reversal, the remarks must be "of such a nature as to have been clearly capable of producing an unjust result."  Ibid. (quoting R. 2:10-2).  Generally, if there is no objection, the remarks will not be deemed prejudicial.  Timmendequas, 161 N.J. at 576.  Counsel's failure to object suggests that counsel did not consider the remarks to be prejudicial at the time

they were made. Ibid. Moreover, the failure to raise a timely objection deprives the trial court of the opportunity to address any impropriety. Ibid.

Applying these standards, we are satisfied the prosecutor's comments did not deprive defendant of a fair trial. Defendant asserts there were no facts in the record to support the prosecutor's statement that "if the technology existed for Det[ective] Acevedo to have [the] recording [found on Bynes' cellphone] cleaned up, he would have taken advantage of that. But this is not CSI, this isn't Hollywood." However, the prosecutor's comment was clearly supported by Acevedo's testimony that he did not attempt to have the audio recording from Bynes' phone enhanced or further analyzed because "he didn't think that capability was available."

Contrary to defendant's argument, the prosecutor also did not improperly comment on defendant's silence when he discussed the testimony of defendant's girlfriend and the treatment of defendant's gunshot wound. The prosecutor stated:

> [H]e tells her that he was down at Pennington Court when people tried to rob him, and that's when they shot him. She offers to call the police, and it's the defendant that tells her not to. . . . Defendant never tells her that he was there at the scene of the homicide. And it's interesting, ladies and gentlemen, for the same reason that it's interesting that the defendant was reluctant to even tell the detectives that he was with [Bynes] that

> night. It wasn't a crime to be with [Bynes] any other night of the week, and it's not a crime to witness a homicide. It wouldn't have been a crime -- if he admitted . . . to being the victim of a violent crime to [his girlfriend]. He was shot during a robbery. Why not just tell him that he was shot when he witnessed a homicide?

Defendant argues that "any comment upon the defendant's refusal to admit to the detectives . . . whether he was present at the time of the victim's murder violated" his right to remain silent. However, it is well established that when two or more of a defendant's statements are admitted into evidence, "the State may seek to impeach the validity of those statements" by pointing out inconsistencies. State v. Tucker, 190 N.J. 183, 190 (2007).

Here, defendant never refused to admit to the detectives whether he was present for the shooting or whether he was with Bynes. Initially, he stated he was present at the time of the murder, but that he did not meet up with Bynes, and was only passing through the area. Then, he changed his story, and said he was with Bynes. "The fact is, defendant did not remain silent, but freely related different stories to the police." Ibid. Under these circumstances, we are satisfied that the prosecutor's comments were appropriate because they merely drew attention to the inconsistencies between the multiple stories defendant told the detectives.

In her closing statement, defense counsel argued that the detectives did not thoroughly investigate the case. Defendant asserts that the prosecutor improperly bolstered the detectives' credibility when the prosecutor stated in response:

> The theory that you were presented with is that this is shoddy police work by lazy and biased officers.
>
> . . . You have been presented with no evidence to support the defendant's theory, and you have seen quite the opposite. These detectives worked tirelessly to find out who Jermaine Bynes was when he was alive, who are the people in his life, what did they mean to him, and to rebuild his final movements piece-by-piece.
>
> You heard the testimony. They worked through the night and well into the next day of this investigation. Often working 14 to 15 hour days, interviewing people, taking statements and examining evidence. Detectives have an obligation and a duty to follow leads to their natural end. And this is what was done here. Think about it. The easiest thing in the world for these detectives would have been to go out [and] arrest Sultan Wheeler and put the defendant on the stand as a witness.

Defendant's argument that the prosecutor's remarks were improper lacks merit because "[a] prosecutor is not forced to idly sit as a defense attorney attacks the credibility of the State's witnesses; a response is permitted." State v. Hawk, 327 N.J. Super. 276, 284 (App. Div. 2000) (citing State v. C.H., 264 N.J.

Super. 112, 135 (App. Div. 1993)). Thus, the prosecutor's comments were appropriate under the circumstances.

Finally on this point, defendant alleges the prosecutor made "an unabashed appeal to passion, to sympathy for the victim and to arouse hatred of the defendant" by telling the jury:

> Throughout this trial, the defendant's rights have been honored. So you know what, ladies and gentlemen, there is someone else in this room that had a right. Jermaine Bynes had a right to life, and this defendant had no right to take that life months, days, hours, or even seconds before his time.
>
> Jermaine Bynes had a right to live and die in his own time. And this defendant robbed Jermaine of that right.

Contrary to defendant's argument, these comments do not require reversal. In State v. Marshall, 123 N.J. 1, 163 (1991), the Supreme Court addressed similar comments by a prosecutor in a murder trial about the victim, including that "[s]he had a right to live her life in full, to watch her boys continue to grow, to watch them graduate from school, to get married and have families of their own." Although the Court described the comments as "an obvious appeal for sympathy toward the victim," it concluded the remarks were "neither extensive nor inflammatory," and found them "harmless beyond a reasonable doubt." Ibid.

Thus, the prosecutor's similar "right to live" comment in this case, like the prosecutor's comments in <u>Marshall</u>, do not require our intervention.

IV.

Defendant next argues that the trial judge incorrectly denied his motion for a judgment of acquittal at the end of the State's case-in-chief.  He argues that an acquittal was required because the details of his statements to the detectives were not corroborated by independent evidence as required by <u>State v. Reddish</u>, 181 N.J. 553, 617-18 (2004).  We disagree.

A motion for acquittal must be granted "if the evidence is insufficient to warrant a conviction."  <u>R.</u> 3:18-1.

> On a motion for judgment of acquittal, the governing test is:  whether the evidence viewed in its entirety, and giving the State the benefit of all of its favorable testimony and all of the favorable inferences which can reasonably be drawn therefrom, is such that a jury could properly find beyond a reasonable doubt that the defendant was guilty of the crime charged.
>
> [<u>State v. D.A.</u>, 191 N.J. 158, 163 (2007) (citing <u>State v. Reyes</u>, 50 N.J. 454, 458-59 (1967)).]

Our review of a trial court's denial of a motion for acquittal is "limited and deferential" and is governed by the same standard as the trial court.  <u>Reddish</u>, 181 N.J. at 620.

A-3908-18

To support a conviction, a defendant's confession must be corroborated by some independent evidence. Id. at 617-18. However, a trial court need only determine whether "the State has introduced 'any legal evidence' that 'tend[s] to generate a belief in [the statement's] trustworthiness . . . ." Id. at 618 (alteration in original) (quoting State v. Lucas, 30 N.J. 37, 56, 62 (1959)). "[I]ssues of fact as to corroboration of the confession," such as "missing details or discrepancies in the story[,]" are for the jury to resolve. Ibid. (citations omitted). Therefore, a trial court should not grant a motion for a judgment of acquittal "on these grounds when the State provides 'any legal evidence, apart from the confession of facts and circumstances, from which the jury might draw an inference that the confession is trustworthy.'" Id. at 617 (quoting Lucas, 30 N.J. at 62).

Here, the trial judge correctly found that the State satisfied the Reddish requirement. The State presented evidence that defendant's cellphone was found near the murder scene. This corroborated defendant's admission that he was in the courtyard. In addition, the detectives retrieved three .9 millimeter shell casings near Bynes' body. These casings were the same caliber as the gun defendant said was used in the shooting. Finally, the State also introduced the testimony of defendant's girlfriend, who stated she treated him for gunshot wounds on the night of Bynes' murder. That testimony corroborated defendant's

23

admission that he accidentally shot himself with the murder weapon as he ran from the courtyard.

Because defendant's statement to the detectives was adequately corroborated to establish its trustworthiness, the judge properly denied his motion for a judgment of acquittal. Therefore, we reject defendant's contentions on this point.[8]

V.

Finally, defendant argues that the trial judge imposed an excessive sentence. However, we cannot address that issue because we are constrained to remand this matter for resentencing for a different reason.

Under count one, defendant was convicted of conspiracy to commit murder, which is a first-degree offense under N.J.S.A. 2C:5-4(a). The sentencing range for a first-degree offense is between ten and twenty years. N.J.S.A. 2C:43-6(a)(1). At the sentencing hearing, however, defendant's attorney and the prosecutor both advised the trial judge that the sentencing range for this offense was between ten and thirty years, and the judge sentenced

---

[8] Defendant also asserts that if his statement had been deemed inadmissible under Miranda, there would not have been sufficient evidence in the record to convict him of any of the charges. However, in view of our ruling that the statement was admissible, this contention plainly lacks merit. See R. 2:11-3(e)(2).

defendant to a twenty-five-year term, subject to NERA. This was an illegal sentence because it exceeded the statutory maximum penalty. State v. Murray, 162 N.J. 240, 246-47 (2000).

Neither party raised this issue in their respective briefs. However, "a reviewing court is not free to ignore an illegal sentence." State v. Crawford, 379 N.J. Super. 250, 257 (App. Div. 2005) (citing State v. Moore, 377 N.J. Super. 445, 450 (App. Div. 2005)). Therefore, we asked the parties to address this matter through supplemental briefing. Both defendant and the State now agree, as do we, that this matter must be remanded for resentencing to correct the sentencing error.

At resentencing, the trial court should address each of the sentences imposed, including those for the two weapons offenses. In this regard, we note that the sentencing judge's stated reasons for imposing a consecutive sentence on the possession of a weapon with an unlawful purpose conviction consisted of only the following brief statement:

> I forgot to mention the reasons for the consecutive sentences. I've considered the Yarbough[9] factors, all four of them. I understand this was one incident, but the possession of the weapon for an unlawful purpose, it's a separate objective than the conspiracy to commit murder, plus the crimes that the defendant is being

---

[9] State v. Yarbough, 100 N.J. 627 (1985).

sentenced for were not numerous. And, therefore, I feel that consecutive sentences are applicable.

This terse explanation for the consecutive sentence was not sufficient. In

Yarbough, the Court

> established the factors a trial court must consider in determining whether to impose consecutive sentences. 100 N.J. at 643-44. A court must "articulate [its] reasons" for imposing consecutive sentences "with specific references to the Yarbough factors." State v. Abdullah, 184 N.J. 497, 515 (2005). "[A] statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions . . . [in order to] determine whether the trial court's imposition of consecutive sentences was a valid exercise of discretion." State v. Soto, 385 N.J. Super. 247, 256 (App. Div. 2006) (quoting State v. Miller, 108 N.J. 112, 122 (1987)).
>
> [State v. Chavarria, 464 N.J. Super. 1, 19 (App. Div. 2020).]

As our Supreme Court recently stated:

> An explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment. It is the necessary second part to a Yarbough analysis, as Miller emphasized. 108 N.J. 122 (noting importance of Yarbough factor two – placing reasons for consecutive sentence on record). Acknowledging and explaining the fairness of the overall sentence imposed on the defendant advances

critical sentencing policies of the Code [of Criminal Justice],[10] as amplified by Yarbough.

[State v. Torres, 246 N.J. 246, 268 (2021).]

Here, the judge did not provide the required "explicit statement, explaining the overall fairness of [the] sentence imposed on . . . defendant" as required by Yarbough. Torres, 246 N.J. at 268. The judge also failed to specifically address all of the Yarbough factors. Therefore, on remand, the trial court shall resentence defendant on all three of his convictions.

Affirmed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] N.J.S.A. 2C:1-1 to :104-9.